UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

SKYJET, INC., a Texas for
profit corporation,

       Plaintiff,

v.

CSDS ASSET MANAGEMENT, LLC.,
a Nevada limited liability company,

       Defendant.

_____/

CASE NO.:_____

### DEFENDANT'S NOTICE OF REMOVAL

As provided by 42 U.S.C. § 1441 et seq., Defendant, CSDS ASSET MANAGEMENT, LLC.,

a Nevada limited liability company, ("Defendant"), hereby files this Notice of Removal of the above-

styled action from the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County,

Florida, where the action is now pending under Case Number 2022-007670 CA 08, to the United

States District Court for the Southern District of Florida. In connection with this Notice of Removal,

Defendant states:

      1.     The above-styled action was commenced by Plaintiff, SKYJET, INC., a Texas for

profit corporation ("Plaintiff"), in the Circuit Court of the Eleventh Judicial Circuit in and for

Miami-Dade County, Florida by filing of a Complaint on April 25, 2022. Defendant was served with

a copy of the Complaint on May 2, 2022. Accordingly, pursuant to 28 U.S.C. § 1446(b), this Notice

of Removal is timely filed.[1]

      2.     This action is a civil action in which this Court has original diversity jurisdiction

---

[1] Under the previously controlling Florida Rules of Civil Procedure, and the currently
controlling Federal Rules of Civil Procedure, a response to the Complaint was due on May 22,
2022. *See* Fed. R. Civ. P. 81(c)(2)(B) (a defendant who did not answer before the removal must
respond to the complaint within the longest of three periods, here the longest such period being
"21 days after being served with the summons for an initial pleading on file at the time of
service"). However, Plaintiff has agreed to an extension to respond through Friday, June 3, 2022.

under 28 U.S.C. § 1332(a)(1) and is one which may be removed to this Court by Defendant pursuant to the provisions of 28 U.S.C. §§ 1441 and 1446, in that:

(a) It is an action between citizens of different states; and

(b) It is an action in which the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

3.      Under 28 U.S.C. § 1332(c)(1), Plaintiff is, and was at the time of the commencement of this action, a citizen of the States of Texas and Florida because it is a corporation organized under the laws of the State of Texas and has, according to the Amended Complaint, "a principal place of business and office in Miami-Dade County, Florida." (Amd. Comp., ¶3).

4.      Under 28 U.S.C. § 1332(c)(1), Defendant is, and was at the time of the commencement of this action, a citizen of the State of Nevada. (Amd. Comp., ¶4).

5.      Defendant submits that it is reasonably deducible from the allegations of damages that this claim satisfies the amount in controversy requirement and is thus removable because the amount in dispute is in excess of Seventy-Five Thousand Dollars ($75,000) based upon the allegations of the Amended Complaint. Specifically, in the pleading, Plaintiff claims that Defendant "refuses to return the outstanding Initial Deposit in the amount of Two Hundred Fifth Thousand Dollars ($250,000) despite [Plaintiff] being completely entitled to a full refund of its Initial Deposit." (Amd. Comp., ¶31).

6.      A defendant may allege removability that is apparent from the face of the complaint, in which case the district court must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden. District courts must make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleading to determine whether it is facially apparent that a case is removable." *Black v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 4340281, *1 (S.D.Fla. Oct. 22, 2010) (internal citations omitted); *see also Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (allowing district courts to consider whether it is "facially apparent" from a

complaint that the amount in controversy is met).

7.      As noted Defendant was served a copy of the Complaint on May 2, 2022. Thus, this Notice of Removal is timely, since 28 U.S.C. 1446(b) grants parties thirty (30) days to remove an action to Federal Court "after receipt. . .of a copy of the initial pleading. . .or within thirty days after the service of summons upon defendant in such initial pleading has been filed in court and is not required to be served on the defendant, whichever period is shorter." *See* 28 U.S.C. 1446(B).

8.      To date, the operative pleading which Defendant has received is  the Verified Amended Complaint filed in the Circuit Court on May 9, 2022.  Accordingly, the deadline to respond to Plaintiff's Verified Amended Complaint is May 19, 2022.  However, Defendant has requested and Plaintiff has agreed to an extension of time to file a response to the Verified Amended Complaint and other filings until June 3, 2022, with no objection, Fed. R. Civ. P. 81(c);*see also* n. 1, above.

9.      By removing this action to this Court, Defendant does not waive any defenses, objections, or motions available under state or federal law. Defendant expressly reserves the right to move for dismissal of some or all of Plaintiff's claims pursuant to Rule 12 of the Federal Rules of Civil Procedure.

10.      Venue in this Court is proper pursuant to 28 U.S.C. § 1441(a) because this action is being removed from the state court in which it was originally filed, the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, to the District Court of the United States for the district and division in which such action is pending, the Southern District of Florida.

11.      As required by 28 U.S.C. §1446(a), attached are copies of all process, pleadings, motions, orders, and other papers served upon Defendants and/or filed in the state court action, which include:

(A) Amended Verified Complaint.

(B) Civil Actions Summons.

(C) Amended Ex-Parte Motion for Emergency Temporary Injunctive Relief.

     12.    Pursuant to procedural requirements for removal set forth in 28 U.S.C. § 1446(d), Defendant will file a Notice of Filing Notice of Removal with the Clerk of Court for the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, and will provide written notice of this Notice of Removal to all parties.

     13.    Defendant reserve the right to amend or supplement this Notice of Removal with information and additional bases for removal that may come to light upon further investigation.

## MEMORANDUM OF LAW

### A.    The United States District Court Has Jurisdiction Over this Matter

A state court action may be removed to a United States District Court where "the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a). In the instant case, original jurisdiction is available under 28 U.S.C. § 1332, which provides, [t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between— (1) citizens of different States."

### B.    Defendant Has Complied With the Procedure for Removal

The procedure governing removal of actions first filed in state court is set forth in 28 U.S.C. § 1446. Section 1446 provides that any defendant desiring to remove a civil action from state court must file a notice of removal which contains:

> a short plain statement of the grounds for removal, together with a copy of all
> process, pleadings and orders served upon such defendant in such action.

*See* 28 U.S.C. § 1446. Furthermore, any notice of removal must be filed within thirty (30) days after receipt of the initial pleadings. *Id.*

Paragraphs 1 through 13 above set forth the grounds on which removal is sought, specifically citing the federal statutes upon which original jurisdiction is premised (under 28 U.S.C. § 1332) and the factual support for that jurisdiction. Accordingly, Defendant has complied with the terms of 28

U.S.C. § 1446, which dictate that a short plain statement of the grounds for removal accompany any notice of removal. In addition, this notice has annexed to it all process, pleadings and other papers that have been served on Defendant in compliance with 28 U.S.C. § 1446.

**C.    Conclusion**

Defendant has complied with the procedural requirements of 28 U.S.C. § 1446, the Federal Rules of Civil Procedure, and the Local Rules of the Southern District of Florida which govern removal from state court, and this Court has original jurisdiction over this matter.

Accordingly, Defendant respectfully requests that the United States District Court for the Southern District of Florida take jurisdiction over this action.

**WHEREFORE,** Defendant, CSDS ASSET MANAGEMENT, LLC., a Nevada limited liability company, ("Defendant"), hereby gives notice that the state court action pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida under Case No.: 2022-007670 CA 08 is removed to the United States District Court for the Southern District Court for the Southern District of Florida.

Respectfully submitted this 27th day of May, 2022.

Respectfully submitted,

**FEILER & LEACH, P.L.**
Counsel for Defendant
901 Ponce de Leon Blvd.
Suite # 300
Coral Gables, FL 33134
Tel: (305) 441-8818
mel@flmlegal.com
erodriguez@flmlegal.com

BY: /s/ Martin E. Leach
       Martin E. Leach
       FBN: 0037990

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are authorized to receive electronically Notices of Electronic Filing.

By: _____/s/_____
**Martin E. Leach**
Florida Bar No. 0037990

## SERVICE LIST

**RYAN CLANCY, ESQ.**
**AINSWORTH + CLANCY, PLLC**
801 Brickell Avenue
8th Floor
Miami, Florida 33131
Telephone (305) 600-3816
Facsimile (305) 600-3817
ryan@business-esq.com
info@business-esq.com

# AMENDED VERIFIED COMPLAINT

Filing # 149180527 E-Filed 05/09/2022 10:53:15 AM

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA

SKYJET, INC., a Texas for-profit
Corporation,

      Case No.: 2022-007670-CA-01

     *Plaintiff,*

v.

CSDS Asset Management LLC,
a Nevada limited liability company;

     *Defendant.*

_____/

## AMENDED VERIFIED COMPLAINT

**COME NOW**, SKYJET, INC., ("Skyjet" or "Plaintiff"), a Texas for-profit corporation authorized to transact business in Florida, by and through their undersigned counsel, hereby files its Amended Verified Complaint against Defendant, CSDS Asset Management LLC, a Nevada limited liability company ("CSDS" or "Defendant"), and in support hereof alleges as follows:

## JURISDICTION, VENUE & PARTIES

1.    This is an action for injunctive relief, equitable relief, declaratory judgment, and damages in excess of thirty thousand dollars ($30,000.00) exclusive of interest, costs, and attorney's fees.

2.    Venue is proper in Miami-Dade County, Florida because Defendant's acts giving rise to the causes of action accrued herein.

3.    Plaintiff, SKYJET, INC., is a for-profit corporation incorporated in Texas, with a principal place of business and office in Miami-Dade County, Florida.

4.    Defendant, CSDS Asset Management LLC, is a Nevada limited liability company and is engaged in substantial and not isolated activity within the State of Florida.

5.      Defendant routinely engages in interstate commerce across the United States and provides aviation services to individuals and businesses, such as Plaintiffs, based in Miami-Dade County, Florida, and has committed acts giving rise to the causes of action within Miami-Dade County, Florida.

6.      This Court has jurisdiction pursuant to Florida's Long Arm Statute as the Defendant has engaged in actions which bring it within the jurisdiction of the Courts of Florida pursuant to Fla. Stat. § 48.193.

7.      Plaintiff has retained the undersigned counsel and are obliged to pay attorneys' fees arising from this action.

8.      Plaintiff seeks to recover attorneys' fees and costs as may be available by contract and/or under Florida law.

9.      All conditions precedent have occurred, have been performed, or have been waived.

## GENERAL ALLEGATIONS

10.     CSDS is an aircraft sale and leasing company.

11.     Skyjet is an air charter and commercial flight operator.

12.     In or around June of 2021, CSDS, as the registered owner of Boeing 757-200 Cargo Aircraft with Manufacturer Serial number 25014 and registration N755CS (the "Aircraft"), and Skyjet entered into negotiations for the sale of the Aircraft to Skyjet.

13.     On or about June 28, 2021, CSDS authorized Skyjet to operate the Aircraft per a signed agreement between the parties and agreed to cooperate with Skyjet in its efforts to get the Aircraft into operation. *See* Authorization Letter attached hereto as Exhibit "A".

14.     Thereafter, on or about September 7, 2021, CSDS and Skyjet entered into a Sale-Purchase Agreement (the "Agreement"), whereby Skyjet agreed to purchase the Aircraft, with no

engines installed, from Defendant for Three Million Dollars ($3,000,000.00). *See* Sale-Purchase Agreement attached hereto as Exhibit "B".

15.     The Agreement's "Payment Terms" comprised of a One Million Dollar ($1,000,000.00) down payment and twenty monthly payments of One Hundred Thousand Dollars ($100,00.00). *Id.* at Section 3.

16.     The Agreement does not state when the full $1,000,000.00 down payment was due; however, the course of conduct between the parties dictated that the down payment was not due until Skyjet inspected and accepted the Aircraft.

17.     Once Skyjet made the twentieth monthly payment, free and clear title of the Aircraft would pass to Plaintiff. *Id.*

18.     At the time the Agreement was signed, Skyjet already paid CSDS an "Initial deposit" of Seven Hundred Fifty Thousand Dollars ($750,000.00) to be contributed to the down payment once Skyjet inspected the Aircraft. *See id* at Section 4; *see also* Wire Transfer Confirmations for Initial Deposit and August 18, 2021 Refund of $150,000.00 attached here to as Composite Exhibit "C."[1]

19.     Upon receipt of this Initial Deposit, CSDS agreed to "remove the [A]ircraft from the market until such time [Skyjet] has technically inspected[2] *and* has accepted or rejected the aircraft." *Id.* (emphasis added).

20.     Moreover, the initial deposit was "refundable until [Skyjet] . . . accepted the aircraft technically." *Id.* at Section 10. Whereas, "[s]oon after technical acceptance, Deposit shall be non-refundable in all instances, except; 1. Aircraft is damages or destroyed before delivery to [Skyjet].

---

[1] Before August 18, 2021, Plaintiff had made three initial deposit payments for a total $500,000.00. On August 18, 2021, Defendant refunded Plaintiff $150,000.00. On September 7, 2021, Plaintiff made another initial deposit payment of $400,000.00, amounting to a total initial deposit of $750,000.00.
[2] Technical inspection is defined below in paragraph 22.

2. [CSDS] is unable to deliver the [A]ircraft per this agreement with [Skyjet], at no fault [Skyjet]."

*Id.* at Section 4.

21.     To "technically accept" the Aircraft, Skyjet was first required and had the contractual right to inspect the Aircraft. *Id.* at Section 5.

22.     More specifically, the Parties agreed to the following inspection:

> [Skyjet] shall conduct a acceptance inspection at [the Aircraft's] current location at Miami Tech MRO, Miami international Airport (MIA), Florida, and soon after, [Skyjet] shall accept or reject the aircraft based on Airworthiness discrepancies with the aircraft or discrepancies with the records. If no such discrepancies are found, [Skyjet] shall accept the aircraft technically, by signing of the Technical Acceptance form . . .

*Id.*; *see also id.* at Exhibit B.

23.     On or around September 9, 2021, Skyjet went to Miami Tech MRO, Miami International Airport to perform its inspection of the Aircraft.

24.     However, Skyjet was prohibited from inspecting the Aircraft. Miami International Airport authorities informed Skyjet that all access to the Aircraft was prohibited as a result of a lien attached to the Aircraft. *See* Aircraft Lien attached hereto as Exhibit "D."

25.     Upon information and belief, the Aircraft has other outstanding liens as well. *See* Other Liens attached hereto as Exhibit "E."

26.     Prior to this date, Skyjet was not notified that there were any liens attached to the Aircraft preventing it from inspection.

27.     Shortly thereafter, Skyjet informed CSDS that it could not sign the Technical Acceptance Form because the lien prevented Skyjet from inspecting the Aircraft. Although CSDS

nevertheless encouraged Skyjet to sign the Technical Acceptance Form despite having not inspected the Aircraft, Skyjet refused until it could have its agreed-to inspection.[3]

28.     In addition, Skyjet waited to pay CSDS the down payment's remaining Two Hundred and Fifty Thousand Dollars ($250,000.00) as it was Skyjet's understanding that the rest of the down payment was not due Skyjet inspected the Aircraft.

29.     While waiting for CSDS to satisfy the lien so that Skyjet could inspect the Aircraft, on or about February 1, 2022, CSDS emailed Skyjet stating that the Agreement was terminated due to default, that it would be refunding the Initial Deposit to Skyjet, and that the Aircraft was now committed to another operator.[4] *See* February 1, 2022 Email attached hereto as Exhibit "F."

30.     On or about February 24, 2022, CSDS returned a total of Five Hundred Thousand Dollars ($500,000.00). *See* Wire Confirmation of $500,000.00 Refund attached hereto as Exhibit "G."[5]

31.     However, CSDS refuses to return the outstanding Initial Deposit in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) despite Skyjet being completely entitled to a full refund of its Initial Deposit.

32.     As stated above, according to Section 10 of the Agreement, the full Initial Deposit was refundable until Skyjet accepted the Aircraft technically, which it was never able to do because CSDS allowed liens to be attached to the Aircraft, which in turn, prevented Skyjet from inspecting the Aircraft.

---

[3] The "Aircraft Technical Acceptance" Form attached as Exhibit B to the Agreement was not executed by Skyjet's owner, Ahmed Mustafa. CSDS printed Ahmed Mustafa's name in anticipation of his signature, however, no such signature was ever executed as stated above.
[4] This is all irrespective of the fact that: (1) Skyjet was not in default of the Agreement and (2) the Initial Deposit was refundable because Skyjet did not sign the Technical Acceptance form. In this Email, CSDS even acknowledged that the Initial Deposit would be refunded to Skyjet.
[5] Note Special Instructions of Wire Confirmation "757F MSN 25014 Deposit Refund".

33.     CSDS wrongfully terminated the Agreement because Skyjet was not in default. It was the Parties common understanding under the Agreement and common-sense logic that the remaining down payment and subsequent monthly payments were not due until Skyjet inspected and accepted the Aircraft.

34.     In fact, it was CSDS who breached the Agreement by not taking the Aircraft off the market as required by Section 4 of the Agreement which states "[u]pon receipt of the deposit [CSDS] shall remove the aircraft from the market until such time [Skyjet] has technically inspected and has accepted or rejected the aircraft" Exhibit B at Section 4, by allowing liens to be attached to the Aircraft, preventing Skyjet from inspecting it, and by committing to sell the Aircraft to another operator.

35.     Despite Skyjet's several attempts to resolve this instant dispute without litigation, such attempts have been made to no avail as CSDS refuses to comply with the Agreement.

36.     Skyjet has performed all conditions precedent to the institution of this action, or such conditions have been excused or waived.

## COUNT I – DECLARATORY JUDGMENT RE: DEPOSIT

37.     Plaintiff, Skyjet, re-alleges, incorporates, and asserts by reference the allegations set forth in paragraphs 1-36..

38.     Plaintiff and Defendant entered into the Agreement, for the purchase of an Aircraft.

39.     Under the Agreement, Plaintiff was to pay a Down Payment of $1,000,000.00.

40.     However, the Agreement is silent and/or ambiguous as to when the down payment was due to Defendant.

41.     Defendant claims that Plaintiff was in default of the Agreement by not paying the full $1,000,000.00 down payment before terminating the Agreement.

42.     Plaintiff disputes this claim. The full down payment was not due until after Plaintiff technically accepted the Aircraft by inspecting the Aircraft and signing the Technical Acceptance form.

43.     Plaintiff requires input from this Court as to when the full $1,000,000.00 down payment was due.

44.     A bona fide, actual, present practical need for declaration exists.

45.     The declaration concerns a present, ascertained or ascertainable state of facts or present controversy as to a state of facts. Specifically, it is controverted that the down payment was due before the technical acceptance of the Aircraft by Plaintiff.

46.     Plaintiff's immunity, power, privilege or right is dependent upon the facts or the law applicable to the facts.

47.     Plaintiff has an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law.

48.     The antagonistic and adverse interests are all before the court by proper process.

49.     The relief sought is not merely the giving of legal advice or the answer of questions propounded for curiosity.

**WHEREFORE,** Plaintiff seeks from a Court a declaration that: pursuant the terms of the Agreement, the full $1,000,000.00 down payment was not due until after Plaintiff technically accepted the Aircraft. Plaintiff further seeks any other relief the Court deems proper.

## COUNT II – TEMPORARY INJUNCTION

50.     Plaintiff, Skyjet, re-alleges, incorporates, and asserts by reference the allegations set forth in paragraphs 1-36.

51.     This is an action for temporary injunctive relief against Defendant, CSDS, for failure to honor the Agreement with Plaintiff and refusing to sell the Aircraft to Plaintiff.

52.     Under the Agreement, Plaintiff has a right to inspect the Aircraft and accept or reject the Aircraft and ultimately has the right purchase the Aircraft, but Defendant's actions, which are directly contrary to the Agreement, hinder that right.

53.     In light of Plaintiff's clear legal interest in the Aircraft and Defendant's complete refusal to honor their Agreement, Plaintiff seeks a temporary injunction to stop Defendant from selling the Aircraft to any third party until there is a final hearing on the merits of Plaintiff's claims.

54.     If Defendant sells the Aircraft to a third-party party and refuse to comply with the Agreement, Plaintiff will suffer irreparable harm for which it will have no adequate remedy at law. Specifically, Plaintiff will suffer irreparable harm in that it will be unable to fulfill certain promises and obligations made to customers. Further, the Aircraft is also unique and as such, a monetary damage award cannot compensate Plaintiff for Defendant's breach.

55.     Plaintiff has a substantial likelihood of success on the merits of its claims because the facts are uncontroverted that Plaintiff and Defendant had a valid and enforceable contract in which Defendant would sell the Aircraft to Plaintiff. Plaintiff has part-performed under the Agreement and is willing and able to fully perform under the Agreement. However, Defendant refuses to deliver the Aircraft to Plaintiff. As a result of the unique nature of the Aircraft, Plaintiff is entitled to a judgment compelling Defendant to perform its obligations owed to Plaintiff.

56.     In weighing the potential injury and harm, there is no remedy at law that would be able to compensate the Plaintiff from the resulting damage should Defendant be allowed to sell the Aircraft; whereas, should Defendant be restrained from selling the Aircraft, Defendant would still have the Aircraft and the ability to sell the Aircraft, therefore not suffer any loss or damage.

57.     Plaintiff's requested temporary injunction would serve the public interest because the public has an interest in the protection and enforcement of contractual rights, such as Plaintiff's.

**WHEREFORE**, Plaintiff, Skyjet, respectfully requests that this Court require Defendant, CSDS, to refrain from selling the Aircraft until Defendant clears the liens from the Aircraft and Plaintiff has a chance to inspect the Aircraft and accept or reject it, and award Plaintiff such other relief as this Court deem just and proper.

## COUNT III – SPECIFIC PERFORMANCE

58.     Plaintiff, Skyjet, re-alleges, incorporates, and asserts by reference the allegations set forth in paragraphs 1-36.

59.     This Count is an action for Specific Performance against Defendant, pled in the alternative to any conflicting or duplicative relief sough elsewhere.

60.     Plaintiff and Defendant entered into the Agreement, which is a valid, binding, and enforceable contract.

61.     The Agreement clearly and unambiguously requires that Plaintiff inspect the Aircraft. However, Plaintiff has been unable to inspect the Aircraft because Defendant has not yet cleared the liens on the Aircraft.

62.     The Agreement also requires the Defendant to deliver the Aircraft Airframe title to Plaintiff free and clear of liens and to deliver the Title of the Aircraft free and clear of liens to Plaintiff upon the final monthly payment.

63.     Plaintiff has part-performed under the Agreement and is willing and able to fully perform under the Agreement.

64.     However, contrary to the express terms of the Agreement, Defendant failed to honor his obligations under the Agreement, by not clearing the liens on the Aircraft to allow

Plaintiff to inspect the Aircraft, refusing to continue with the sale of the Aircraft to Plaintiff and stating it would sell the Aircraft to another party.

65.     Although Plaintiff has been unable to accept the Aircraft due to the liens attached to it, Plaintiff remains ready, willing, and able to perform under the terms of the Agreement and to complete the purchase of the Aircraft.

**WHEREFORE,** Plaintiff, Skyjet, respectfully requests that this Court require Defendant to perform its obligations owed under the Agreement and award Plaintiff such other relief as this Court deems just and proper.

## COUNT IV – BREACH OF CONTRACT

66.     Plaintiff, Skyjet, re-alleges, incorporates, and asserts by reference the allegations set forth in paragraphs 1-36.

67.     This Count is an action for Breach of Contract against Defendant, pled in the alternative to any conflicting or duplicative relief sough elsewhere.

68.     Plaintiff and Defendant entered into the Agreement for the sale of the Aircraft.

69.     The Agreement entered into is a valid, binding, and enforceable contract between Plaintiff and Defendant.

70.     First, Defendant breached its duties under the Agreement by allowing liens to be attached to the Aircraft which prevented Plaintiff from its right to inspect the Aircraft under Section 5 of the Agreement.

71.     Second, Defendant also breached Section 16 of the Agreement on or about February 1, 2022, when it wrongfully terminated the Agreement.

72.     Section 16 of the Agreement states "[e]ither party may terminate this Agreement in the event the other party materially breached any of the terms and conditions contained herein, or otherwise defaults in the performance of its contractual obligations."

73.     As such, Defendant wrongfully terminated the Agreement because Plaintiff was not in default. It was the Parties common understanding under the Agreement and common-sense logic that the remaining down payment and subsequent monthly payments were not due until Plaintiff inspected the Aircraft, which it could not do because of Defendant's material breach in allowing liens to be placed on the Aircraft, preventing Plaintiff from inspecting it.

74.     Third, Defendant breached Section 10 of the Agreement when it failed to return Plaintiff's full initial deposit.

75.     Section 10 of the Agreement states that the Initial Deposit "shall remain refundable until [Plaintiff] has accepted the aircraft technically."

76.     Thus, the Initial Deposit was refundable until Plaintiff accepted the Aircraft technically, which it was never able to do because Defendant allowed liens to be attached to the Aircraft, which in turn, prevented Skyjet from inspecting the Aircraft. Defendant even admitted Plaintiff's right to the refund by refunding $500,000.00 of the $750,000.00 Initial Deposit to Plaintiff.

77.     Fourth, Defendant breached Section 4 of the Agreement by not removing the Aircraft from the market. Section 4 of the Agreement states that "[u]pon receipt of the deposit [Defendant] shall remove the aircraft from the market until such time [Plaintiff] has technically inspected and has accepted or rejected the aircraft."

78.     As a direct and proximate cause of Defendant's breaches, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff, Skyjet, respectfully requests that this Court enter judgment against Defendant for damages, pre-judgment and post-judgment interest, and such other and further relief as this Court deem just and Proper.

## COUNT V – UNJUST ENRICHMENT

79.     Plaintiff, Skyjet, re-alleges, incorporates, and asserts by reference the allegations set forth in paragraphs 1-36.

80.     This Count is an action for Unjust Enrichment against Defendant, pled in the alternative to any conflicting or duplicative relief sough elsewhere.

81.     Plaintiff conferred a benefit on Defendant by paying Defendant $750,000.00 as an initial deposit for the purpose of buying the Aircraft.

82.     Defendant has knowledge of such benefit and has refunded Plaintiff $500,000.00 out of the $750,000.00 payment.

83.     Defendant has refused to refund Plaintiff the remaining $250,000.00.

84.     Defendant voluntarily accepted and retained the benefit conferred.

85.     The circumstances render the Defendant's retention of the benefit inequitable without paying the Plaintiff the remaining value of the benefit, $250,000.00.

**WHEREFORE**, Plaintiff, Skyjet, respectfully requests that this Court enter judgment against Defendant for damages, pre-judgment and post-judgment interest, and such other and further relief as this Court deem just and Proper.

## COUNT VI – PERMANENT INJUNCTION

86.     Plaintiff Skyjet, re-alleges, incorporates, and asserts by reference the allegations set forth in paragraphs 1-36.

87.     This is an action for permanent injunctive relief against Defendant, CSDS, for failure to honor the Agreement with Plaintiff and refusing to sell the Aircraft to Plaintiff.

88.     Plaintiff has a right to inspect the Aircraft, and accept or reject the Aircraft pursuant to the findings during the Inspection and ultimately has the right purchase the Aircraft, but Defendant's actions which are directly contrary to the clear and unambiguous language of the Agreement hinder that right.

89.     Plaintiff seeks a temporary injunction to stop Defendant from selling the Aircraft to any party until Defendant clears the liens from the Aircraft and Plaintiff has a chance to inspect the Aircraft and accept or reject it.

90.     If Defendant sells the Aircraft to another party and refuses to comply with the Agreement, Plaintiff will suffer irreparable harm for which it will have no adequate remedy at law. Specifically, Plaintiff will suffer irreparable harm in that it will be unable to fulfill certain promises and obligations made to customers. Further, the Aircraft is also unique and as such, a monetary damage award cannot compensate Plaintiff for Defendant's breach.

91.     Considering the balance of hardship between the Plaintiff and Defendant, a remedy in equity is warranted. There is no remedy at law that would be able to compensate the Plaintiff from the resulting damage should Defendant be allowed to sell the Aircraft; whereas, should Defendant be restrained from selling the Aircraft, Defendant would still have the Aircraft and the ability to sell the Aircraft, therefore not suffer any loss or damage.

92.     The public interest would not be disserved by a permanent injunction as the public has an interest in the protection and enforcement of contractual rights, such as Plaintiff's.

**WHEREFORE**, Plaintiff, Skyjet, respectfully requests that this Court require Defendant, CSDS, to refrain from selling the Aircraft until Defendant clears the liens from the Aircraft and

Plaintiff has a chance to inspect the Aircraft and accept or reject it and award Plaintiff such other relief as this Court deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

## VERIFICATION

Under penalties of perjury, on behalf of SKYJET, INC., I declare that I have read the foregoing, and the facts alleged are true, to the best of my knowledge and belief.

By: __Ahmed Mustafa__

President

Dated: May 6, 2022

Respectfully submitted,

**AINSWORTH + CLANCY, PLLC**
801 Brickell Avenue, 8th Floor
Miami, FL 33131
Telephone: (305) 600-3816
Facsimile: (305) 600-3817
*Counsel for Plaintiffs*

By: s/Ryan Clancy
Ryan Clancy, Esq.
Florida Bar No. 117650
Email: ryan@business-esq.com
Email: info@business-esq.com

# EXHIBIT "A"
# Purchase-Sale Agreement

## SALE-PURCHASE AGREEMENT

**Reference**: 1991 Boeing 757-200 Freighter Aircraft, **MSN**: 25014  Airframe
**Registration**: N755CS
**Engines**: PW 2037 SN: 728729 and 726716 – (Provided under a different contract)

**CSDS Asset Management LLC,** of Rolling Hills Estate, California, USA (**"Owner/ Seller"**)
offer to sell certain Cargo aircraft to,

**SKYJET INC**,  1639 w 23rd st DFW AIRPORT DALLAS TX 75261 (**"Purchaser"**), on the
terms described below.

**Recitals:**

    **1.** **Sale-Purchase of one Aircraft:** Subject to the terms and conditions set
forth herein, Seller hereby agrees to sell and deliver, and Purchaser hereby agrees to
accept, **one (01) 1991 Boeing 757-200 Freighter Aircraft, MSN 25014,** with no
Engines installed on the aircraft, **Airframe only**, with all accessories and equipment
attached thereto, including all systems, log books, documents and the equipment listed in
the specification sheet made a part hereof as **Exhibit A**, hereinafter referred to as the
"**Aircraft**" On the following terms.

    **2.** **Cash price of the aircraft:** The Sale price shall be **Three Million(US$3,000,000)
US Dollars,** for the described aircraft, exclusive of taxes, payable by United States Dollars, in
the condition stated in EXHIBIT A.

    **3.**    **Payment Terms:**
**Down payment:** One Million ($1,000,000) USD
**Term**: Twenty (20) Months
**Monthly payment**: One Hundred Thousand ($100,000) USD per month waived during
the C check entering to service .
**Maintenance reserve:** None

**Soon after the 20th payment is made, free & clear title to the aircraft shall pass to the
Purchaser for US$1 Dollar.**

    **4. Initial deposit:** Purchaser has already paid a sum of Seven Hundred Fifty
Thousand (US$750,000) USD for the benefit of the Seller to the Bank account below,
    Seller Bank info:
    **Beneficiary:** CSDS Aircraft Sales & Leasing Inc, 609 Deep Valley Drive,
            Suite 200, Rolling Hills Estates, Ca 90274.
    **Bank:** Citibank, N.A. 100 Citibank Drive, San Antonio, TX 78245. USA
    **Account:** 207249913    **ABA:** 322271724

    **Swift:** CITIUS33
    **Ref:** B757-200 Freighter, MSN 25014 deposit



CSDS Asset Management LLC, Nevada, USA. Reg# C20170411-0235

Soon after technical acceptance, Deposit shall be non-refundable in all instances, except;

1. Aircraft is damaged or destroyed before delivery to the Purchaser.
2. Seller is unable to deliver the aircraft per this agreement with the Purchaser, at no fault of the Purchaser.

Deposit will be applied towards the security deposit.
Upon receipt of the deposit Seller shall remove the aircraft from the market until such time Purchaser has technically inspected and has accepted or rejected the aircraft.

**5. Inspection:** Purchaser shall conduct a acceptance inspection at its current location at Miami Tech MRO, Miami international Airport (MIA), Florida, and soon after, Purchaser shall accept or reject the aircraft based on Airworthiness discrepancies with the aircraft or discrepancies with the records. If no such discrepancies are found, Purchaser shall accept the aircraft technically, by signing of the Technical Acceptance form, EXHIBIT B.

6. **Condition:** Aircraft will be delivered in condition:
1. Complete Airframe with no missing parts
2. AS-IS-WHERE-IS
3. Airframe title Free & Clear of any encumbrances or liens

7. **Delivery & Closing:**
On an agreed closing date, around 15th of September 2021, no later than 25th September 2021.

8. **Original:** For purposes of negotiating and finalizing this Agreement, any signed document transmitted by fax machine shall be treated in all manner and respects as an original document with an original signature and shall be considered to have the same binding legal effect as an original document. At the request of either party, any fax document shall be re-executed by both parties in an original form.

9. **Force Majeure:** Neither party shall be liable for any failure of or delay in its performance under this Agreement for the period that such failure or delay is due to (i) acts of God or the public enemy, civil war, insurrection or riots; (ii) fires, explosions or serious accidents, not caused by such party; (iii) governmental priorities or allocations, strikes or labor disputes, equipment or parts from vendors; or (iv) any other cause beyond the party's reasonable control; provided the party agrees to notify the other promptly of the occurrence of any such cause and in such notice the party will advise the other party either (a) of its inability to perform, in which event the Deposit shall be returned to Purchaser, and upon such notice and return, this Agreement shall terminate without further notice, force and effect, or (b) of the party's intention to perform within (30) days of such notice, in which event the other party agrees to extend the date of Closing for such thirty (30) day period.

10. **Risk of Loss:** If after execution of this Agreement and prior to the delivery of the Aircraft the Aircraft is damaged or is the subject of a total loss, Seller or Purchaser shall have the option of terminating this Agreement with no further obligation to the other party except that Seller shall immediately return the Deposit to Purchaser. Risk of loss, damage, or destruction to the Aircraft shall pass from Seller to Purchaser upon Purchaser's execution of the receipt acknowledging delivery of the Aircraft.

Deposit shall remain refundable until Purchaser has accepted the aircraft technically. If

11. **Taxes:** Any and all taxes, excises, value added taxes, duties and assessments whatsoever arising out of the Sell and Delivery of the Aircraft and the use, operation and disposition of the Aircraft thereafter ("**Taxes**"), shall be the sole responsibility and liability of Purchaser. Seller shall be responsible for all taxes, duties, assessments, etc. associated with their ownership and use of the aircraft. The Parties agree to amend this agreement if necessary so as to modify the venue of the sale of the Aircraft for tax purposes.

12. **Indemnification.** Purchaser shall defend, indemnify and hold harmless Seller, its shareholders, directors, officers, employees, agents and affiliates from and against(i) any and all Taxes and (ii) any and all claims, damages, losses, liabilities, demands, suits, judgments, causes of action, legal proceedings, whether civil or criminal, penalties, fines and other costs and expenses (including reasonable attorneys' fees, expert's fees and legal expenses) which may result from or arise in any manner out of or in relation to an event occurring from and after the delivery of the Aircraft to Purchaser and which relate to (i) the condition, ownership, leasing, subleasing, Sale, possession, disposition, use or operation of the Aircraft by Purchaser, (ii) any defect in the Aircraft arising from the design, testing or use thereof or any maintenance, service, repair or overhaul of the Aircraft, regardless of when such claim shall arise and regardless of where the Aircraft may then be located.

13. **Limited warranty and disclaimer:** Seller warrants that it has good and merchantable title to the Aircraft and shall convey such to Purchaser free and clear of all encumbrances at the time of delivery.

14. **Assignment of warranties:** Seller shall assist Purchaser in the assignment of any and all existing assignable warranties, service life policies and patent indemnities of manufacturers and maintenance and overhaul agencies to or for Seller, of and for the Aircraft.

15. **Assignment or delegation:** The Purchaser may assign its rights in this Agreement to another entity formed by Purchaser for purposes of purchasing the Aircraft. Otherwise, the obligations of the parties under this Agreement may not be delegated in whole or in part, and any assignment by the parties of rights or delegation of obligations under this Agreement shall be deemed void and wholly without legal effect.

16. **Termination:** Either party may terminate this Agreement in the event the other party materially breaches any of the terms and conditions contained herein, or otherwise defaults in the performance of its contractual obligations. Such termination shall be effective upon ten (10) days written notice to the defaulting party and shall in no way affect the rights or liabilities of the parties which shall have accrued as of the date of such termination. In addition, Purchaser may terminate this agreement as provided at Section 5.

17. **Modification:** No modification, amendment or termination of this Agreement shall be effective unless it is in writing and signed by the respective party or parties or their duly authorized representatives.

18. **Applicable Law:** This agreement shall be exclusively construed and interpreted in accordance with the laws of the State of California or Florida, United States of America.

19. **Waiver:** All rights of the parties hereunder are separate and cumulative. No waiver by either party of any default hereunder shall be deemed a waiver of any subsequent default.

20. **Entire Agreement**: This Agreement sets forth the entire contract between parties and supersedes all previous communications, representations or agreements, whether oral or written, between the parties with respect to the sale of the Aircraft.  Should any provision of this Agreement be void or unenforceable, such provision shall be deemed omitted, and this Agreement, with such provision omitted, shall remain in full force and effect.

21. **Expenses**.  Each of the parties hereto shall pay its own costs and expenses, including the fees and disbursements of legal counsel, in connection with the sale of the Aircraft.  Each of Seller and Purchaser hereby agrees to indemnify and hold harmless the other, its shareholders, directors, officers, employees, agents and affiliates, from and against any and all claims or suits for any broker's or finder's fee or commission by any person arising out of this Agreement or the sale and delivery of the Aircraft hereto, to the extent that the services of such person were alleged to be procured by the indemnifying party.

22. **Insurance:**  Soon after the signature of this agreement, Purchaser shall put the two aircraft on Purchasers current fleet Policy, including Comprehensive Aviation Liability Insurance including War Risk and Allied Perils, Cargo, Baggage and Mail Liability, including but not limited to coverage for bodily injury, passenger bodily injury, property damage, personal injury and losses, claims and damages against which Purchaser has agreed to indemnify Seller as set out in Section 6 of this Agreement (collectively "Liability Insurance").
Seller shall be named as loss payee, until the aircraft has been paid off.

IN WITNESS WHEREOF, the parties have executed this Agreement by their duly authorized agents.

"Purchaser"

Skyjet inc

_____
AHMED MUSTAFA
President

7th September 2021

"Seller"
**CSDS Asset Management LLC**

_____
Benedict Sirimanne
President

7th September 2021

**<u>EXHIBIT A</u>**

**<u>Aircraft</u>**

**1991 Boeing 757-200 Freighter**

**MSN:** 25014

**TT:** 95,254 Hours

**TC:** 84,368 Cycles

**Engines: PW 2037**

**SN:  No Engines installed**

**<u>Interior Configuration:</u>**

Cargo Configuration Interior



**EXHIBIT B**

## AIRCRAFT TECHNICAL ACCEPTANCE

SKYJET INC . ("Purchaser"), pursuant to and in accordance with that certain Aircraft Sale agreement (PA), dated as of 7th September 2021 (the "Sell Agreement"), acknowledges that **CSDS Asset Management LLC** of Rolling Hills Estates, California, USA ("Seller") has allowed Purchaser to inspect that certain Aircraft identified more particularly as follows:

**One 1991 Boeing 757-200 Freighter Aircraft, MSN 25014,** no Engines on the aircraft, **otherwise complete airframe**, with all accessories and equipment attached thereto.

By executing and delivering this Technical Acceptance Certificate, Purchaser accepts the technical condition of the Aircraft including its records, in accordance with the terms of the signed Sale Agreement.

Executed this 10th day of September, 2021.

By: _____AHMED MUSTAFA____

Its: _____

(Purchaser)

<u>**EXHIBIT C**</u>

## <u>AIRCRAFT DELIVERY AND ACCEPTANCE RECEIPT</u>

.AHMED MUSTAFA .(Name of Officer SKYJET INC ("Purchaser"), pursuant to and in accordance with that certain Aircraft Sale Agreement dated as of 7th of September 2021 (the "Sell Agreement"), hereby accepts and acknowledges receipt from **CSDS Asset Management LLC** of Rolling Hills Estates, USA ("Seller") of that certain Aircraft identified more particularly as follows:

> **One 1991 Boeing 757-200 Freighter Aircraft, MSN 25014,** with no Engines installed **otherwise complete Airframe** with all accessories and equipment attached thereto.

Date of Acceptance: 15th of September 2021.

Delivery location: Miami International Airport (MIA), USA

By executing and delivering this Delivery and Acceptance Receipt, Purchaser acknowledges that Seller has delivered the aircraft in the agreed condition and further agrees that it has accepted delivery of the Aircraft including its records and acknowledges that it has no rights or claims against Seller in respect of the condition of the Aircraft or its records.

**(Purchaser)**

.....................................................................

## EXHIBIT D

## BILL OF SALE

**CSDS Asset Management LLC,** of Rolling Hills Estates, California, USA ("Seller"), is the owner of the full legal and beneficial title to the following equipment, all as described in the Aircraft Purchase Agreement between Seller and SKYJET INC . based in DALLAS TEXAS. ("Purchaser"), dated as of 12th of May, 2018 (the "Aircraft"):

1.    One **1991 Boeing 757-200, MSN 25014 Freighter** with no Engines installed on the aircraft otherwise complete Airframe, with all accessories and equipment attached thereto.

2.    All appliances, parts, instruments, appurtenances, accessories, furnishings or other equipment or property installed in or attached to such aircraft and engines; and,

3.    All records and manuals applicable to such aircraft and engines.

For and in consideration of One Dollar (US D1) and other valuable consideration, receipt of which is hereby acknowledged, Seller does hereby sell, grant, transfer, deliver and set over to Purchaser and its successors and assignees forever all of Seller's right, title and interest in and to the Aircraft (in as-is-where-is condition), to have and to hold the Aircraft for its and their use forever.

Seller hereby warrants to Purchaser and its successors and assigns that there is hereby conveyed to Purchaser on the date hereof good and valid title to the Aircraft free and clear of all liens, claims, charges and encumbrances whatsoever.  Seller will warrant and defend such title forever against all claims and demands.

Dated: 30th May 2023

(Expected Payoff date)

**CSDS Asset Management LLC,**

.........................................

**EXHIBIT D**

**FORM OF ASSIGNMENT OF WARRANTIES**

**ASSIGNMENT OF WARRANTIES**

FOR VALUABLE CONSIDERATION, the receipt of which is hereby acknowledged and pursuant to the terms and conditions of the Aircraft Sale Agreement dated as of 12th of May 2021 (the "Sale Agreement") between Purchaser and Seller (as hereinafter defined), **CSDS Asset Management LLC**, company based in Rolling Hills Estates, California, USA,("Seller") hereby assigns, transfers, sells, delivers, and conveys to, ...................... ("Purchaser"), all of Seller's right, title and interest in and to all existing and assignable warranties, service life policies and patent indemnities of manufacturers and maintenance and overhaul providers, if any, relating to that certain, **One 1991 Boeing 757-200 Freighter Aircraft, MSN 25014**, with no Engines installed otherwise complete Airframe with all accessories and equipment attached thereto, with all accessories and equipment attached thereto including but not limited to any and all claims, rights, and benefits of Seller under such warranties, policies, indemnities, and patent indemnities.

This Assignment of Warranties (i) may not be amended or modified except in a writing signed by the parties hereto, (ii) shall be governed by and construed in accordance with the laws of the State of Florida without regard to the conflict of laws principles thereof, (iii) may be executed in one or more counterparts, each of which shall be an original but all of which shall constitute but one and the same agreement, (iv) together with the Sale Agreement represents the entire agreement between the parties with respect to the subject matter hereof, and (v) shall be binding upon and inure to the benefit of the parties and their respective successors and assigns.

IN WITNESS WHEREOF, the parties hereto have affixed their signatures as of this 30th September, 2023.

By:

_____

Benedict Sirimanne/ President

**CSDS Asset Management LLC**

# EXHIBIT "B"
# Authorization Letter



## CSDS Asset Management LLC

**609 Deep Valley Drive, Suite 200, Rolling Hills Estates, Ca 90274, USA.**
**Tel: (310)896 2312  Fax: (310)734 1691 email: info@csdsaircraft.com**

**Skyjet inc**
6405 NW 36TH ST
Suite 109, Miami, FL 33166                                    Date: 28th June 2021
USA.
Attn: Cpt. Ahmed Mustafa

### Re: Letter of Authorization to operate B757 MSN: 25014, Reg: N755CS

Dear Cpt. Ahmed,

I, Benedict Sirimanne, in my capacity as the Managing member of CSDS Asset Management LLC, the registered owner of one Boeing 757-200 Cargo Aircraft with Manufacturer Serial number 25014 and registration N755CS, hereby authorizes Skyjet Inc, located in Dallas Texas USA, to operate the said aircraft per the signed agreement between CSDS & Sky Jet Inc.

Furthermore, to use the said aircraft for commercial charter worldwide, in any manner Skyjet sees fit, in accordance with the FAA commercial Aircraft operations requirements, and be the direct signatory of all charter agreement and collect funds without CSDS assuming any liability towards any such contracts with third parties.

Skyjet has the full right to make decision/decisions regarding the commercial charter agreement and approve/agree or refuse any agreement not in the right of the commercial plan have been set it up by Skyjet , "Such decision/decisions are sole right of Sky Jet Inc.

This letter gives Skyjet the full authority to operate our aircraft as mentioned above and CSDS shall cooperate with Skyjet to in its efforts to get aircraft in to operation.

Sincerely,

Benedict Sirimanne
Managing Member
CSDS Asset Management LLC

# EXHIBIT "C"
# Initial Deposit and $150,000 Reund Wire Transfers

16:11 

**< Inbox** ∧ ∨

# transfer was successfully sent

## We have successfully sent the following transfer:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| Item #: | 340874612 |
|---|---|
| Amount: | $200,000.00 |
| To: | CSDS Aircraft sales & Leasing |
| Fee: | 30.00 |
| Send on Date: | 05/25/2021 |
| Service: | Same Day |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## If there is a problem with executing your request, we will notify you both by email and on the Manage

14:02 



# Your Same Day wire transfer was successfully sent

We have successfully sent the following transfer:

**********************************

**********

Item #:       345333412

Amount:       $100,000.00

To:           CSDS Aircraft sales & Leasing

Fee:          30.00

Send on Date:   06/29/2021

Service:   Same Day

**********************************

**********

If there is a problem with executing your request, we will notify you

**11:01** 



# Your Same Day wire transfer was successfully sent

We have successfully sent the following transfer:

*************************************

**********

Item #:        347514860

Amount:        $200,000.00

To:            CSDS Aircraft sales &
Leasing

Fee:           30.00

Send on Date:  07/15/2021

Service:   Same Day

*************************************

**********

If there is a problem with executing

your request we will notify you

14:00 

‹ **Inbox**                    ∧  ∨

**To:** Ahmed Mustafa ›

# Your Same Day wire transfer was successfully sent

## We have successfully sent the following transfer:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Item #:**      354377682

**Amount:**       $400,000.00

**To:**        CSDS Aircraft sales & Leasing

**Fee:**       30.00

**Send on Date:**   09/07/2021

**Service:**   Same Day

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**If there is a problem with executing**

      

8/18/2021                                                CitiBusiness Online Wire Recap

## Wire Confirmation

Status: **Processed** - Confirmation Number is **20212300252569**.

**Source Account**

   Account: *****9913 (Checking)

**Scheduling**

   Immediately upon approval

**Destination**

| | |
|---|---|
| **Amount:** | $150,000.00 |
| **Beneficiary:** | Skyjet Inc<br>6405 NW 36th Street<br>suite 109<br>Miami, FL 33166 |
| **Account:** | 488096609998 |
| **Bank:** | BANK OF AMERICA, N.A., NY (ABA: 026009593)<br>New York, NY |
| **Special Instructions:** | 757F Deposit refund |

# EXHIBIT "D"
# Lien attached to Aircraft on day of inspection



# NOTICE AND CLAIM OF LIEN

Notice is hereby given to the owner and all persons interested in the attached property that pursuant to the provisions of Section 329.40 and Section 705.183, Florida Statutes, Miami-Dade County, a political subdivision of the State of Florida the Claimant and owner of the airport listed below, claims a lien upon the aircraft listed below

State of Florida
County of Miami-Dade

Before me, the undersigned notary public, personally appeared <u>Joseph Kinnebrew</u>, who was duly sworn and says that he is the Airport Designee for Miami-Dade County's Aviation Department, and that the following aircraft has been unlawfully located at the Airport listed below either because it has been on the Airport for more than 45 days in an idle state or else is in an abandoned or derelict condition:

<u>BOEING 767-240PF (SERIAL NO. 26014)</u>
(Description of Aircraft)
<u>NO ENGINES</u>
(Description of Engines)
<u>N738CS formerly ETA-IX</u>
(FAA or Foreign Registration Number)
<u>MIAMI INTERNATIONAL AIRPORT 2100 NW 42ND AVENUE, MIAMI, FL 33126</u>
(Airport and Address)

The last registered owner or other legal or equitable owners and their addresses are:

<u>CSDS ASSET MANAGEMENT LLC: 609</u> Deep Valley Drive, Ste. 200, Rolling Hills Estates, CA 90274-3414

The Airport served this Notice and Claim of Lien on the foregoing legal and equitable owners on <u>May 12th, 2021</u>, by certified mail for domestic recipients or other appropriate manner for foreign recipients.

The aircraft has accrued storage charges and other fees for the use of facilities at the above-listed Airport in the amount of <u>$247,036.00</u> covering the period from <u>September 1st, 2020</u> to <u>May 3rd, 2021</u>. The County has a lien on the aircraft for this amount, and the owner will be liable for such fees and charges as well as the cost for publication of this notice. The lien is subject to enforcement pursuant to law, and the Airport may cause the sale, removal, or disposition of the aircraft or engine under Section 329.40 or Section 705.183 if, within 30 calendar days after either the date of receipt of this Notice and Claim of Lien or the date of this Notice, the aircraft has not been removed from the Airport upon payment in full of all accrued fees and charges for the use of the Airport and for the storage and removal charges of the aircraft.

A copy of this Notice and Claim of Lien has been attached to the foregoing aircraft. It is unlawful for any person to remove or attempt to remove the aircraft from the Airport unless payment of the foregoing amount is paid to the Airport. Violations of this provision constitute a misdemeanor of the second degree, punishable as provided in Sections 775.082 or 775.083, F.S.

Joseph Kinnebrew, Airport Designee
Miami-Dade Aviation Department
(305) 876.7359

KECIA L. GRIFFIN
Notary Public - State of Florida
Commission # HH 71486
My Comm. Expires Dec 13, 2024
Bonded through National Notary Assn.

**STATE OF FLORIDA**

**COUNTY OF MIAMI-DADE**

Sworn to (or affirmed) and subscribed before me this _12th_ day of _May_, 20 _21_.

The foregoing person signing this document is personally known to me.

NOTARY PUBLIC

Posted by: <u>A. Tubella - Badge # 629 - 05/11/2021</u>

# EXHIBIT "E"
## Other Liens



CFN 2021R0396297
OR BK 32546 Ps 1671 (1Pss)
RECORDED 06/04/2021 12:52:16
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

# NOTICE AND CLAIM OF LIEN

Notice is hereby given to the owner and all persons interested in the attached property that pursuant to the provisions of Section 329.40 and Section 705.183, Florida Statutes, **Miami-Dade County**, a political subdivision of the State of Florida, **the Claimant and owner of the airport listed below,** claims a lien upon the aircraft listed below.

State of Florida:
County of Miami-Dade:

Before me, the undersigned notary public, personally appeared <u>Joseph Kinnebrew</u>, who was duly sworn and says that he is the Airport Designee for Miami-Dade County's Aviation Department, and that the following aircraft has been unlawfully located at the Airport listed below either because it has been on the Airport for more than 45 days in an idle state or else is in an abandoned or derelict condition:

<u>BOEING 757-260PF (SERIAL NO. 25014)</u>
(Description of Aircraft)
<u>NO ENGINES</u>
(Description of Engines)
<u>N755CS formerly ETAJX</u>
(FAA or Foreign Registration Number)
<u>MIAMI INTERNATIONAL AIRPORT 2100 NW 42ND AVENUE, MIAMI, FL 33126</u>
(Airport and Address)

The last registered owner or other legal or equitable owners and their addresses are:

**CSDS ASSET MANAGEMENT LLC:** 609 Deep Valley Drive, Ste. 200, Rolling Hills Estates, CA 90274-3614

The Airport served this Notice and Claim of Lien on the foregoing legal and equitable owners on <u>May 12th, 2021</u>, by certified mail for domestic recipients or other appropriate manner for foreign recipients.

The aircraft has accrued storage charges and other fees for the use of facilities at the above-listed Airport in the amount of <u>$247,036.00</u> covering the period from <u>September 1st, 2020</u> to <u>May 3rd, 2021</u>. The County has a lien on the aircraft for this amount, and the owner will be liable for such fees and charges as well as the cost for publication of this notice. The lien is subject to enforcement pursuant to law, and the Airport may cause the sale, removal, or disposition of the aircraft or engine under Section 329.40 or Section 705.183 if, within 30 calendar days after either the date of receipt of this Notice and Claim of Lien or the date of this Notice, the aircraft has not been removed from the Airport upon payment in full of all accrued fees and charges for the use of the Airport and for the storage and removal charges of the aircraft.

A copy of this Notice and Claim of Lien has been attached to the foregoing aircraft. It is unlawful for any person to remove or attempt to remove the aircraft from the Airport unless payment of the foregoing amount is paid to the Airport. Violations of this provision constitute a misdemeanor of the second degree, punishable as provided in Sections 775.082 or 775.083, F.S.

Joseph Kinnebrew, Airport Designee
Miami-Dade Aviation Department
(305) 876.7359

KECIA L. GRIFFIN
Notary Public - State of Florida
Commission # HH 71486
My Comm. Expires Dec 13, 2024
Bonded through National Notary Assn.

**STATE OF FLORIDA**

**COUNTY OF MIAMI-DADE**

Sworn to (or affirmed) and subscribed before me this 12th day of _____May_____, 20 21.

The foregoing person signing this document is personally known to me.

NOTARY PUBLIC

Posted by: <u>A. Tubella ● Badge # 529 ● 05/11/2021</u>



CFN 2021R0467816
OR BK 32593 Pg 2299 (1Pg)
RECORDED 07/01/2021 11:11:19
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

# NOTICE AND CLAIM OF LIEN

Notice is hereby given to the owner and all persons interested in the attached property that pursuant to the provisions of Section 329.40 and Section 705.183, Florida Statutes, **Miami-Dade County**, a political subdivision of the State of Florida, **the Claimant and owner of the airport listed below,** claims a lien upon the aircraft listed below.

State of Florida:

County of Miami-Dade:

Before me, the undersigned notary public, personally appeared **Joseph Kinnebrew**, who was duly sworn and says that he is the Airport Designee for Miami-Dade County's Aviation Department, and that the following aircraft has been unlawfully located at the Airport listed below either because it has been on the Airport for more than 45 days in an idle state or else is in an abandoned or derelict condition:

**BOEING 757-260PF (SERIAL NO. 25014)**
(Description of Aircraft)
**NO ENGINES**
(Description of Engines)
**N755CS formerly ETAJX**
(FAA or Foreign Registration Number)
**MIAMI INTERNATIONAL AIRPORT 2100 NW 42ND AVENUE, MIAMI, FL 33126**
(Airport and Address)

The last registered owner or other legal or equitable owners and their addresses are:

**CSDS ASSET MANAGEMENT LLC**: 609 Deep Valley Drive, Ste. 200, Rolling Hills Estates, CA 90274-3614

The Airport served this Notice and Claim of Lien on the foregoing legal and equitable owners on **June 25th, 2021**, by certified mail for domestic recipients or other appropriate manner for foreign recipients.

The aircraft has accrued storage charges and other fees for the use of facilities at the above-listed Airport in the amount of **$302,064.00** covering the period from **October 1st, 2020,** to **June 30th, 2021**. Miami-Dade County has a lien on the aircraft for this amount, and the owner will be liable for such fees and charges as well as the cost for publication of this notice. The lien is subject to enforcement pursuant to law, and the Airport may cause the sale, removal, or disposition of the aircraft or engine under Section 329.40 or Section 705.183 if, within 30 calendar days after either the date of receipt of this Notice and Claim of Lien or the date of this Notice, the aircraft has not been removed from the Airport upon payment in full of all accrued fees and charges for the use of the Airport and for the storage and removal charges of the aircraft.

A copy of this Notice and Claim of Lien has been attached to the foregoing aircraft. It is unlawful for any person to remove or attempt to remove the aircraft from the Airport unless payment of the foregoing amount is paid to the Airport. Violations of this provision constitute a misdemeanor of the second degree, punishable as provided in Sections 775.082 or 775.083, F.S.

Joseph Kinnebrew, Airport Designee
Miami-Dade Aviation Department
(305) 876.7359

**STATE OF FLORIDA**

**COUNTY OF MIAMI-DADE**

Sworn to (or affirmed) and subscribed before me this 25th day of June , 2021 .

The foregoing person signing this document is personally known to me.

NOTARY PUBLIC

**Posted by: J. Kinnebrew • Badge # 601 • 06/25/2021**



PATRICIA M ALMEIDA
Notary Public-State of Florida
Commission # GG 311274
My Commission Expires
March 13, 2023



CFN 2021R0721741
OR BK 32762 Ps 4084 (1Pss)
RECORDED 09/29/2021 09:03:53
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

# NOTICE AND CLAIM OF LIEN

Notice is hereby given to the owner and all persons interested in the attached property that pursuant to the provisions of Section 329.40 and Section 705.183, Florida Statutes, **Miami-Dade County**, a political subdivision of the State of Florida, **the Claimant and owner of the airport listed below**, claims a lien upon the aircraft listed below.

State of Florida:
County of Miami-Dade:

Before me, the undersigned notary public, personally appeared <u>Joseph Kinnebrew</u>, who was duly sworn and says that he is the Airport Designee for Miami-Dade County's Aviation Department, and that the following aircraft has been unlawfully located at the Airport listed below either because it has been on the Airport for more than 45 days in an idle state or else is in an abandoned or derelict condition:

**BOEING 757-260PF (SERIAL NO. 25014)**
(Description of Aircraft)
**NO ENGINES**
(Description of Engines)
**N755CS formerly ETAJX**
(FAA or Foreign Registration Number)
**MIAMI INTERNATIONAL AIRPORT 2100 NW 42ND AVENUE, MIAMI, FL 33126**
(Airport and Address)

The last registered owner or other legal or equitable owners and their addresses are:

**CSDS ASSET MANAGEMENT LLC:** 609 Deep Valley Drive, Ste. 200, Rolling Hills Estates, CA 90274-3614
**COPPER LEAF, LLC:** 17837 First Avenue South #310, Normandy Park, WA 98148

The Airport served this Notice and Claim of Lien on the foregoing legal and equitable owners on **September 15th, 2021**, by certified mail for domestic recipients or other appropriate manner for foreign recipients.

The aircraft has accrued storage charges and other fees for the use of facilities at the above-listed Airport in the amount of **$71,176.00** covering the period from **July 16th, 2021**, to **September 15th, 2021**, and will continue to accrue charges of **$1,148.00** (Non-Premium Parking Fee $648.00 plus Derelict/Non-Operating Fee $500.00 = $1,148.00) per day from the date of this Notice. Miami-Dade County has a lien on the aircraft for this amount, and the owner will be liable for such fees and charges as well as the cost for publication of this notice. The lien is subject to enforcement pursuant to law, and the Airport may cause the use, trade, sale, or removal of the aircraft or engine under Section 329.40 or Section 705.183 if, within 30 calendar days after either the date of receipt of this Notice and Claim of Lien or the date of this Notice, the aircraft has not been removed from the Airport upon payment in full of all accrued fees and charges for the use of the Airport and for the storage and removal charges of the aircraft.

A copy of this Notice and Claim of Lien has been attached to the foregoing aircraft. It is unlawful for any person to remove or attempt to remove the aircraft from the Airport unless payment of the foregoing amount is paid to the Airport. Violations of this provision constitute a misdemeanor of the second degree, punishable as provided in Sections 775.082 or 775.083, F.S.

Joseph Kinnebrew, Airport Designee
Miami-Dade Aviation Department
(305) 876.7359

HEIDI L. ANTHONY
Notary Public-State of Florida
Commission # HH 182089
My Commission Expires
August 09, 2025

**STATE OF FLORIDA**

**COUNTY OF MIAMI-DADE**

Sworn to (or affirmed) and subscribed before me this 15 day of SEPTEMBER, 20 21.

The foregoing person signing this document is personally known to me.

HEIDI L ANTHONY
NOTARY PUBLIC

NOTARY PUBLIC
STATE OF FLORIDA
HH 182089

**Posted by: J. Kinnebrew • Badge # 601 • 09/15/2021**

# EXHIBIT "F"
# February 1, 2022
# Email



Begin forwarded message:

**From:** Benedict Sirimanne <ben@csdsaircraft.com>
**Subject: RE: 1991 B757-200PCF MSN 25014 N755CS**
**Date:** February 24, 2022 at 11:17:00 AM EST
**To:** Ahmed Mustafa <president@skyjetaircargo.com>

Hi! Cpt,

See attached the wire confirmation for $500K.
Please confirm when you receive it,

Brgds,

**Benedict Sirimanne**
President
**CSDS Aircraft Sales & Leasing Inc**
609 Deep Valley Drive, Suite 200,
Rolling Hills Estates, Ca 90274. USA
Tel: (310)896 2312
Fax: (310)734 1691
Mobile: (310)980 4158

www.csdsaircraft.com

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the sender. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited

**From:** Ahmed Mustafa <president@skyjetaircargo.com>
**Sent:** Thursday, February 24, 2022 7:59 AM
**To:** Benedict Sirimanne <ben@csdsaircraft.com>
**Subject:** Re: 1991 B757-200PCF MSN 25014 N755CS

Ben
This is our wire instructions
Bank name : chase bank
Account name : Skyjet
Account number: 782539693
ABA : 044000037

**Brgds,**

**Capt. Ahmed S Mustafa**

**President Skyjet Inc**
6405 NW 36th St
Suite 109
Miami, FL 33166
Ph: +1(305) 780-9513
Cel:+1(416) 475-6701
www.skyjetaircargo.com

On Feb 1, 2022, at 22:49, Benedict Sirimanne <ben@csdsaircraft.com> wrote:

Hi! Cpt.

Just so there is no misunderstanding, this was the agreement you signed and paid
a partial deposit for.
This agreement has been terminated due to default, end of July 2021.
Per our discussion, I will refund your deposit when the aircraft leaves.
The aircraft now committed to another operator.

Hope you understand our position in this matter,

Brgds,

**Benedict Sirimanne**
President
**CSDS Aircraft Sales & Leasing Inc**
609 Deep Valley Drive, Suite 200,
Rolling Hills Estates, Ca 90274. USA
Tel: (310)896 2312
Fax: (310)734 1691
Mobile: (310)980 4158
www.csdsaircraft.com

This email and any files transmitted with it are confidential and intended solely for the
use of the individual or entity to whom they are addressed. If you have received this
email in error please notify the sender. This message contains confidential information
and is intended only for the individual named. If you are not the named addressee you
should not disseminate, distribute or copy this e-mail. Please notify the sender
immediately by e-mail if you have received this e-mail by mistake and delete this e-mail
from your system. If you are not the intended recipient you are notified that disclosing,
copying, distributing or taking any action in reliance on the contents of this information is
strictly prohibited

<PA for 1991 Boeing 757-200 MSN 25014 Airframe Sale with finance5032
(004).pdf>

# EXHIBIT "G"
# $500,000 Refund

## Wire Confirmation

Status: **Processed** - Confirmation Number is **20220550059816.**

> **Source Account**
>
> Account: *****9913 (Checking)

> **Scheduling**
>
> Immediately upon approval

> **Destination**
>
> Saved as Model: Skyjet LLC
>
> |  |  |
> | ---: | :--- |
> | **Amount:** | $500,000.00 |
> | **Beneficiary:** | Skyjet LLC<br>6405 NW 36th Street<br>Suite 109<br>Miami, Fl 33166 |
> | **Account:** | 782539693 |
> | **Bank:** | JPMORGAN CHASE BANK, NA (ABA: 044000037)<br>Columbus, OH |
> | Special Instructions: | 757F MSN 25014 Deposit refund |

# SUMMONS & AFFIDAVIT OF SERVICE

Filing # 148491793 E-Filed 04/27/2022 01:19:36 PM

## IN THE ELEVENTH JUDICIAL CIRCUIT COURT OF THE JUDICIAL CIUCUIT OF MIAMI-DADE COUNTY

Case No. 22-007670-CA-01

SKYJET, INC.,
a Texas For-Profit Corporation,

*Plaintiffs,*

v.

CSDS Asset Management, LLC,
a Nevada limited liability company,

*Defendant.*

_____/

## **SUMMONS**

THE STATE OF FLORIDA:

To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the Complaint in this lawsuit on

Defendant:

CSDS Asset Management, LLC,
a Nevada limited liability company
c/o Business Filings Incorporated, as its Registered Agent
701 S Carson St, Ste. 200
Carson City, Nevada 89701

DATED on: _____4/29/2022_____

CLERK OF THE CIRCUIT COURT
(SEAL)
HARVEY RUVIN
AS CLERK OF THE COURT

By: _____
As Deputy Clerk

# IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is serve don you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to Plaintiff's Attorney named below.

Plaintiff's Attorney:
**AINSWORTH + CLANCY, PLLC**
Ryan M. Clancy, Esq.
Florida Bar No. 117650
801 Brickell Avenue, 8th Floor
Miami, FL 33131 USA
Telephone: (305) 600-3816
Facsimile: (305) 600-3817
*Counsel for Plaintiff*

Filing # 148833895 E-Filed 05/03/2022 10:54:01 AM

IN THE CIRCUIT COURT OF THE 11TH JUDCIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

| | |
|---|---|
| Skyjet, Inc., a Texas For-Profit Corporation | Case No.:22-007670-CA-01 |
| **Plaintiff** | |
| v. | |
| CSDS Asset Management LLC, a Nevada limited liability company | |
| **Defendant** | |

## AFFIDAVIT OF CORPORATE SERVICE

Ann Gomes - Admin, a person of suitable age and discretion, of the office of BUSINESS FILINGS INCORPORATED, registered agent for CSDS Asset Management LLC, a Nevada limited liability company, at the registered address of:

That on 4/29/2022 at 2:59 PM at 701 S Carson St Ste 200, Carson City, NV 897015239 I served CSDS Asset Management LLC, a Nevada limited liability company with the following list of documents: Summons; Verified Complaint; by then and there personally delivering a true and correct copy of the documents into the hands of and leaving with Ana Gomes whose title is Admin.

That the description of the person actually served is as follows: Gender: Female Skin: Caucasian Age: 26- 30 Height: 5'1 - 5'6 Weight: 121-140 Lbs Hair: Brown Eyes:  Marks:

State of Nevada
County of Washoe

Subscribed and sworn before me on 2nd day of May, 2022 by JENNIFER TSANG

_____
JOHNNO LAZETICH
Notary Public
My Commision expires on: 1/28/2024

_____
JENNIFER TSANG
Registration#: R-2022-00525
Reno Carson Messenger Service, Inc
185 Martin St.
Reno, NV 89509

JOHNNO LAZETICH
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No:04-88542-2 - Expires January 28, 2024



Order #:R137390

# EX-PARTE MOTION FOR EMERGENCY TEMPORARY INJUNCTIVE RELIEF

Filing # 149183799 E-Filed 05/09/2022 11:14:37 AM

### IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
### IN AND FOR MIAMI-DADE COUNTY

SKYJET, INC, a Texas for-profit corporation,          Case No. 2022-007670-CA-01

    *Plaintiff,*

v.

CSDS Asset Management LLC, a Nevada
limited liability company,

    *Defendant.*

_____/

### PLAINTIFF'S AMENDED EX-PARTE MOTION FOR EMERGENCY TEMPORARY INJUNCTIVE RELIEF AND/OR TEMPORARY RESTRAINING ORDER

Plaintiff, SKYJET, INC. ("Plaintiff" or "Skyjet"), by and through the undersigned counsel,

hereby files this Amended Ex-Parte Motion for Emergency Temporary Injunctive Relief and/or

Temporary Restraining Order pursuant to Florida Rule of Civil Procedure 1.610 against

Defendant, CSDS Asset Management LLC ("Defendant" or "CSDS"), and alleges as follows:

### INTRODUCTION

1. In Count II of Plaintiff's Amended Verified Complaint, Plaintiff sues Defendant for

Emergency Injunctive Relief to prohibit Defendant from selling a certain and unique aircraft that

Defendant contractually agreed to sell to Plaintiff.

2. As detailed below, Plaintiff is entitled to a temporary injunction on Count II of its Amended

Verified Complaint because: (i) Plaintiff has fully met all required elements under Florida common

law for the issuance of a temporary injunction; and (ii) Plaintiff has satisfied the requirements set

forth in Rule 1.610 for the issuance of an ex parte temporary injunction.

1

## STATEMENT OF FACTS

3.     In or around June of 2021, CSDS, as the registered owner of Boeing 757-200 Cargo Aircraft with Manufacturer Serial number 25014 and registration N755CS (the "Aircraft"), and Skyjet entered into negotiations for the sale of the Aircraft to Skyjet.

4.     On or about June 28, 2021, CSDS authorized Skyjet to operate the Aircraft per a signed agreement between the parties and agreed to cooperate with Skyjet in its efforts to get the Aircraft into operation. *See* Exhibit "A" of Plaintiff's Amended Verified Complaint

5.     Thereafter, on or about September 7, 2021, CSDS and Skyjet entered into a Sale-Purchase Agreement (the "Agreement"), whereby Skyjet agreed to purchase the Aircraft, with no engines installed, from Defendant for Three Million Dollars ($3,000,000.00). *See* Exhibit "B" to Plaintiff's Amended Verified Complaint

6.     The Agreement's "Payment Terms" comprised of a One Million Dollar ($1,000,000.00) down payment and twenty monthly payments of One Hundred Thousand Dollars ($100,00.00). *Id.* at Section 3.

7.     The Agreement does not state when the full $1,000,000.00 down payment was due; however, the course of conduct between the parties dictated that the down payment was not due until Skyjet inspected and accepted the Aircraft.

8.     Once Skyjet made the twentieth monthly payment, free and clear title of the Aircraft would pass to Plaintiff. *Id.*

9.     At the time the Agreement was signed, Skyjet already paid CSDS an "Initial deposit" of Seven Hundred Fifty Thousand Dollars ($750,000.00) to be contributed to the down

payment once Skyjet inspected the Aircraft. *See id* at Section 4; *see also* Composite Exhibit "C" to Plaintiff's Amended Verified Complaint.[1]

10.     Upon receipt of this Initial Deposit, CSDS agreed to "remove the [A]ircraft from the market until such time [Skyjet] has technically inspected[2] *and* has accepted or rejected the aircraft." *Id.* (emphasis added).

11.     Moreover, the initial deposit was "refundable until [Skyjet] . . . accepted the aircraft technically." *Id.* at Section 10. Whereas, "[s]oon after technical acceptance, Deposit shall be non-refundable in all instances, except; 1. Aircraft is damages or destroyed before delivery to [Skyjet]. 2. [CSDS] is unable to deliver the [A]ircraft per this agreement with [Skyjet], at no fault [Skyjet]." *Id.* at Section 4.

12.     To "technically accept" the Aircraft, Skyjet was first required and had the contractual right to inspect the Aircraft. *Id.* at Section 5.

13.     More specifically, the Parties agreed to the following inspection:

> [Skyjet] shall conduct a acceptance inspection at [the Aircraft's] current location at Miami Tech MRO, Miami international Airport (MIA), Florida, and soon after, [Skyjet] shall accept or reject the aircraft based on Airworthiness discrepancies with the aircraft or discrepancies with the records. If no such discrepancies are found, [Skyjet] shall accept the aircraft technically, by signing of the Technical Acceptance form . . .

> *Id.; see also id.* at Exhibit B.

14.     On or around September 9, 2021, Skyjet went to Miami Tech MRO, Miami International Airport to perform its inspection of the Aircraft.

---

[1] Before August 18, 2021, Plaintiff had made three initial deposit payments for a total $500,000.00. On August 18, 2021, Defendant refunded Plaintiff $150,000.00. On September 7, 2021, Plaintiff made another initial deposit payment of $400,000.00, amounting to a total initial deposit of $750,000.00.
[2] Technical inspection is defined below in paragraph 22.

15.    However, Skyjet was prohibited from inspecting the Aircraft. Miami International Airport authorities informed Skyjet that all access to the Aircraft was prohibited as a result of a lien attached to the Aircraft. *See* Exhibit "D" of Plaintiff's Amended Verified Complaint

16.    Upon information and belief, the Aircraft has other outstanding liens as well. *See* Exhibit "E" of Plaintiff's Amended Verified Complaint.

17.    Prior to this date, Skyjet was not notified that there were any liens attached to the Aircraft preventing it from inspection.

18.    Shortly thereafter, Skyjet informed CSDS that it could not sign the Technical Acceptance Form because the lien prevented Skyjet from inspecting the Aircraft. Although CSDS nevertheless encouraged Skyjet to sign the Technical Acceptance Form despite having not inspected the Aircraft, Skyjet refused until it could have its agreed-to inspection.[3]

19.    In addition, Skyjet waited to pay CSDS the down payment's remaining Two Hundred and Fifty Thousand Dollars ($250,000.00) as it was Skyjet's understanding that the rest of the down payment was not due Skyjet inspected the Aircraft.

20.    While waiting for CSDS to satisfy the lien so that Skyjet could inspect the Aircraft, on or about February 1, 2022, CSDS emailed Skyjet stating that the Agreement was terminated due to default, that it would be refunding the Initial Deposit to Skyjet, and that the Aircraft was now committed to another operator.[4] *See* Exhibit "F" of Plaintiff's Amended Verified Complaint

21.    On or about February 24, 2022, CSDS returned a total of Five Hundred Thousand Dollars ($500,000.00). *See* Exhibit "G" of Plaintiff's Amended Verified Complaint.[5]

---

[3] The "Aircraft Technical Acceptance" Form attached as Exhibit B to the Agreement was not executed by Skyjet's owner, Ahmed Mustafa. CSDS printed Ahmed Mustafa's name in anticipation of his signature, however, no such signature was ever executed as stated above.

[4] This is all irrespective of the fact that: (1) Skyjet was not in default of the Agreement and (2) the Initial Deposit was refundable because Skyjet did not sign the Technical Acceptance form. In this Email, CSDS even acknowledged that the Initial Deposit would be refunded to Skyjet.

[5] Note Special Instructions of Wire Confirmation "757F MSN 25014 Deposit Refund".

22.     However, CSDS refuses to return the outstanding Initial Deposit in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) despite Skyjet being completely entitled to a full refund of its Initial Deposit.

23.     As stated above, according to Section 10 of the Agreement, the full Initial Deposit was refundable until Skyjet accepted the Aircraft technically, which it was never able to do because CSDS allowed liens to be attached to the Aircraft, which in turn, prevented Skyjet from inspecting the Aircraft.

24.     CSDS wrongfully terminated the Agreement because Skyjet was not in default. It was the Parties common understanding under the Agreement and common-sense logic that the remaining down payment and subsequent monthly payments were not due until Skyjet inspected and accepted the Aircraft.

25.     In fact, it was CSDS who breached the Agreement by not taking the Aircraft off the market as required by Section 4 of the Agreement which states "[u]pon receipt of the deposit [CSDS] shall remove the aircraft from the market until such time [Skyjet] has technically inspected and has accepted or rejected the aircraft" Exhibit B at Section 4, by allowing liens to be attached to the Aircraft, preventing Skyjet from inspecting it, and by committing to sell the Aircraft to another operator.

26.     To date, Defendant refuses to return Plaintiff's remaining initial deposit/payments and/or honor the Agreement by selling the Plaintiff the Aircraft.

27.     Despite Plaintiff's several attempts to resolve this dispute without litigation, these attempts have been made to no avail as Defendant continues to refuse to comply with the Agreement.

28.     In light of Plaintiff's clear legal interest in the Aircraft and Defendant's complete refusal to honor their Agreement, the Court should immediately enjoin Defendant from selling the Aircraft until further order of this Court.

29.     Plaintiff stands ready, willing, and able to post a bond pursuant to Rule 1.610(1)(b).

30.     Based on the foregoing conduct, as further discussed herein and in the Certificate of Counsel, this Motion is submitted pursuant to Rule 1.610(1)(a) on an ex parte basis without written or oral notice to the Defendant since immediate and irreparable injury, loss, and damage will result to Plaintiff before Defendant can be heard in opposition.

### MEMORANDUM OF LAW

**I.      Plaintiff Meets All Required Elements Under Florida Common Law For The Issuance Of A Temporary Injunction.**

Under Florida law, a party seeking a temporary injunction must establish: (i) a likelihood of irreparable harm and the unavailability of an adequate remedy at law; (ii) a substantial likelihood of success on the merits; (iii) that the threatened injury to the petitioner outweighs any possible harm to the respondent; and (iv) that the granting of a temporary injunction will not disserve the public interest. *Graham v. Edwards*, 472 So.2d 803, 806 (Fla. 3d DCA 1985) (citing *Department of Business Regulation, Division of Alcoholic Beverages & Tobacco v. Provende, Inc.*, 399 So.2d 1038, 1041 (Fla. 3d DCA 1981). Granting a motion for temporary injunction rests within a court's "broad discretion," *Sacred Family Investments, Inc. v. Coral Supermarkets, Inc.*, 20 So. 3d 412, 415 (Fla. 3d DCA 2009), and is "guided by established rules of the principles of equity jurisprudence, in view of the particular facts presented in each case." *Muss v. City of Miami Beach*, 312 So. 2d 553, 554 (Fla. 3d DCA 1975). Additionally, the temporary nature of a temporary injunction is central to a court's inquiry, as "the purpose of a temporary injunction is not to resolve

disputed issues, but to preserve the status quo pending final hearing on the merits." *TJ Mgmt. Group, LLC v. Zidon*, 990 So.2d 623, 625 (Fla. 3d DCA 2008).

### a. *Likelihood of Irreparable Harm and Unavailability of an Adequate Remedy at Law*

Although the "reason for the equitable remedy of temporary injunction is to maintain the status quo pending a final hearing . . . the underlying reason for preserving the status quo is to prevent irreparable harm resulting from damages caused by a change in the status quo." *Airlines Reporting Corp. v. Incentive Internationale Travel, Inc.,* 566 So.2d 1377, 1379 (Fla. 5th DCA 1990) (*citing Lieberman v. Marshall*, 236 So.2d 120 (Fla.1970)). In other words, "[t]he purpose of the temporary injunction is to prevent the likelihood of irreparable harm and possible injury from occurring before it happens." *Quirch Foods LLC v. Broce,* 314 So.3d 327, 342 (Fla. 3d DCA 2020). In doing so, it is not necessary to show that irreparable harm has already occurred, but only that there is a reasonable probability that such harm will occur unless the unlawful action is prevented. *City of Pompano Beach v. Yardarm Rest.*, 509 So. 2d 1295, 1297 (Fla. 4th DCA 1987).

Here, Plaintiff will suffer irreparable harm if Defendant is not estopped from selling the Aircraft during the pendency of Plaintiff's lawsuit against Defendant. As detailed herein and in Plaintiff's Amended Verified Complaint, Plaintiff entered into the Agreement with Defendant in which Defendant agreed to sell the Aircraft to Plaintiff. Defendant breached the Agreement and informed Plaintiff that it instead intends to sell the Aircraft to a third party. Due to Plaintiff's clear legal interest in the Aircraft, Defendant will cause Plaintiff irreparable harm if the Aircraft is sold to another purchaser.

As a threshold matter, planes and parts are not immune from the global supply chain crunches – in other words they are hard to come by. Furthermore Plaintiff is a cargo airline and makes representations to its customers about future routes/lanes/equipment and those customers

rely on those representations in order to assure themselves for future business with Plaintiff. Now, Plaintiff at least to certain customers appears to be unable to fulfill promises that were made, and this is damaging Plaintiff's standing in its own community. Loss of goodwill and reputational harm are the epitome of irreparable harm that cannot be fixed with money (i.e. remedies at law). *See Allied Universal Corp. v. Given*, 223 So. 3d 1040 (Fla. 3d DCA 2017) ("the only focus at the preliminary injunction stage is to maintain longstanding relationships and preserve the company's goodwill").

Plaintiff is entitled to have the status quo preserved by prohibiting Defendant from selling the Aircraft pending a final hearing on Plaintiff's underlying claims.

Should the Court disagree with all of the above, the Aircraft is also unique. As such, a monetary damage award cannot compensate Plaintiff for Defendant's breach because the Aircraft is unique and irreplaceable. *See Telemundo Media, LLC v. Mintz*, 194 So.3d 434, 436 (Fla. 3d DCA 2016).

### b. *Substantial Likelihood of Success on the Merits*

To obtain a temporary injunction, the movant bears the burden of establishing that there is a clear legal right to the ultimate relief sought and a substantial likelihood of success on the merits. *Airport Executive Towers v. CIG Realty, Inc.*, 716 So.2d 311, 313 (Fla. 3d DCA 1998); *see also Naegele Outdoor Advertising Co., Inc. v. City of Jacksonville*, 659 So.2d 1046, 1047 (Fla. 1995) (advancing a merely colorable claim is not enough to show a substantial likelihood of success).

Here, Plaintiff has a substantial likelihood of success on the merits of its underlying claim for Specific Performance. Specific performance can "only be granted when 1) the plaintiff is clearly entitled to it, 2) there is no adequate remedy at law, and 3) the judge believes that justice requires it." *All Seasons Condo. Ass'n, Inc. v. Patrician Hotel, LLC*, 274 So.3d 438, 445-46 (Fla.

3d DCA 2019) (*quoting Castigliano v. O'Connor*, 911 So. 2d 145, 148 (Fla. 3d DCA 2005) (*citing Mrahunec v. Fausti*, 385 Pa. 64, 68, 121 A.2d 878, 880 (1956))). "In order for a contract to be subject to specific performance, it must appear from the writing constituting the contract that the obligations of the parties with respect to [the] conditions of the contract and actions to be taken by the parties are clear, definite and certain." *Id.* (*quoting de Vaux v. Westwood Baptist Church*, 953 So. 2d 677, 682 (Fla. 1st DCA 2007) (*quoting Brown v. Dobry*, 311 So. 2d 159, 160 (Fla. 2d DCA 1975)); *see also 330 Michigan Ave., Inc. v. Cambridge Hotel, Inc.*, 183 So. 2d 725, 726-27 (Fla. 3d DCA 1966) ("Specific performance will not be enforced where the contract is not definite and certain as to essential terms and provisions and is incapable of being made so by the aid of legal presumption or evidence of established customs."))).

The facts are uncontroverted that Plaintiff and Defendant had a valid and enforceable contract in which Defendant would sell the Aircraft to Plaintiff in exchange for three million dollars ($3,000,000.00). The terms of the contract were clear, definite, and certain. In accordance with the Agreement's "payment terms," Plaintiff paid Defendant a Seven Hundred and Fifty Thousand Dollars ($750,000.00) initial deposit leading up to the inspection of the Aircraft. Plaintiff remains ready, willing, and able to fully perform under the Agreement. To be sure, Defendant never questioned or disputed any of this when it was taking in hundreds of thousands of dollars. However, despite Plaintiff's performance, Defendant's actions or inaction have prevented Plaintiff from inspecting the Aircraft, as is its right under the Agreement. Now, Defendant claims that it instead intends to sell the Aircraft to a third party. As a result of the unique nature the Aircraft, Plaintiff is entitled to a judgment compelling Defendant to perform its obligation owed to Plaintiff.

c. *Threatened Injury to Plaintiff Outweighs Any Possible Harm to Defendant*

The harm the movant will suffer by denial of an injunction must outweigh the harm the Defendant will suffer by the issuance of an injunction. *Cordis Corp. v. Prooslin,* 482 So.2d 486 (Fla. 3d DCA 1986). Here, there is no remedy at law that would be able to compensate the Plaintiff from the resulting damage should Defendant be allowed to sell the Aircraft. Once the Aircraft is sold, the damage will have been done to the Plaintiff. Conversely, should Defendant be restrained from selling the Aircraft, even should Plaintiff not prevail in this action, Defendant would still have the Aircraft and the ability to sell the Aircraft and therefore not suffer any loss or damages. The Temporary Injunction would merely maintain the status quo. Moreover, as required, Plaintiff has plead willingness and ability to post a bond for any damages the Defendant could sustain, which again appears to be none.

### d.  *Public Interest Will Not Be Disserved*

Public policy considerations are an integral part of the equitable analysis for an injunctive relief request, and one of the issues is whether the entry of an injunction will or will not serve the public interest. *Sacred Family Invs., Inc. v. Doral Supermarket, Inc.,* 20 SO.3d 412 (Fla. 3d DCA 2009). Here, a temporary injunction would serve the public interest because as this Court has held, "[t]he public has a cognizable interest in the protection and enforcement of contractual rights." *Telemundo,* 194 So. 3d at 436 (*quoting Hilb Rogal & Hobbs of Fla., Inc. v. Grimmel,* 48 SO.3d 957, 962 (Fla. 4th DCA 2010). Thus, preventing Defendant from selling the Aircraft would serve the public interest to that end.

### II.  **Plaintiff Satisfies The Requirements Set Forth In Rule 1.610 For The Issuance Of An Ex Parte Temporary Injunction.**

Pursuant to Rule 1.610:

(1) A temporary injunction may be granted without written or oral notice to the adverse party only if: (A) it appears from the specific facts shown by affidavit or verified pleading that immediate and irreparable injury, loss, or damage will result

to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts that have been made to give notice and the reasons why notice should not be required.

Here, Plaintiff submits its Amended Verified Complaint to establish facts showing that an immediate and irreparable injury, loss, or damage will result to Plaintiff before Defendant can be heard in opposition to the instant Motion. In addition, the below Certificate of Counsel details that efforts have been made to give notice to Defendant and the reasons why notice is not required.

## CONCLUSION

**WHEREFORE,** Plaintiff, SKYJET LLC, requests that this Court enter an Order temporarily enjoining Defendant, CSDS ASSET MANAGEMENT LLC, from selling or transferring ownership of the Aircraft until such time as the Court makes a final determination in this action and granting such other relief as the Court may deem just and proper.

## CERTIFICATE OF COUNSEL

The undersigned counsel, RYAN CLANCY, ESQ., certifies that the Defendant, CSDS ASSET MANAGEMENT LLC, received warnings and notices that Plaintiff would seek injunctive relief and made multiple efforts to resolve the issues with Defendant. Plaintiff and Defendant discussed settlement offers but were not able to come to an agreement. Further notice should not be required because immediate and irreparable injury, loss, and damage will result to Plaintiff before Defendant can be heard in opposition.

Dated: May 9, 2022

Respectfully submitted,

**AINSWORTH + CLANCY, PLLC**
801 Brickell Avenue, 8th Floor
Miami, FL 33131
Telephone: (305) 600-3816
Facsimile: (305) 600-3817
*Counsel for Plaintiffs*

By: s/Ryan Clancy

Ryan Clancy, Esq.
Florida Bar No. 117650
Email: ryan@business-esq.com
Email: info@business-esq.com