# EX-PARTE MOTION FOR EMERGENCY TEMPORARY INJUNCTIVE RELIEF

Filing # 149183799 E-Filed 05/09/2022 11:14:37 AM

# IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY

SKYJET, INC, a Texas for-profit corporation,

Case No. 2022-007670-CA-01

*Plaintiff,*

v.

CSDS Asset Management LLC, a Nevada limited liability company,

*Defendant.*

_____/

## PLAINTIFF'S AMENDED EX-PARTE MOTION FOR EMERGENCY TEMPORARY INJUNCTIVE RELIEF AND/OR TEMPORARY RESTRAINING ORDER

Plaintiff, SKYJET, INC. ("Plaintiff" or "Skyjet"), by and through the undersigned counsel, hereby files this Amended Ex-Parte Motion for Emergency Temporary Injunctive Relief and/or Temporary Restraining Order pursuant to Florida Rule of Civil Procedure 1.610 against Defendant, CSDS Asset Management LLC ("Defendant" or "CSDS"), and alleges as follows:

### INTRODUCTION

1. In Count II of Plaintiff's Amended Verified Complaint, Plaintiff sues Defendant for Emergency Injunctive Relief to prohibit Defendant from selling a certain and unique aircraft that Defendant contractually agreed to sell to Plaintiff.

2. As detailed below, Plaintiff is entitled to a temporary injunction on Count II of its Amended Verified Complaint because: (i) Plaintiff has fully met all required elements under Florida common law for the issuance of a temporary injunction; and (ii) Plaintiff has satisfied the requirements set forth in Rule 1.610 for the issuance of an ex parte temporary injunction.

## STATEMENT OF FACTS

3. In or around June of 2021, CSDS, as the registered owner of Boeing 757-200 Cargo Aircraft with Manufacturer Serial number 25014 and registration N755CS (the "Aircraft"), and Skyjet entered into negotiations for the sale of the Aircraft to Skyjet.

4. On or about June 28, 2021, CSDS authorized Skyjet to operate the Aircraft per a signed agreement between the parties and agreed to cooperate with Skyjet in its efforts to get the Aircraft into operation. *See* Exhibit "A" of Plaintiff's Amended Verified Complaint

5. Thereafter, on or about September 7, 2021, CSDS and Skyjet entered into a Sale-Purchase Agreement (the "Agreement"), whereby Skyjet agreed to purchase the Aircraft, with no engines installed, from Defendant for Three Million Dollars ($3,000,000.00). *See* Exhibit "B" to Plaintiff's Amended Verified Complaint

6. The Agreement's "Payment Terms" comprised of a One Million Dollar ($1,000,000.00) down payment and twenty monthly payments of One Hundred Thousand Dollars ($100,00.00). *Id.* at Section 3.

7. The Agreement does not state when the full $1,000,000.00 down payment was due; however, the course of conduct between the parties dictated that the down payment was not due until Skyjet inspected and accepted the Aircraft.

8. Once Skyjet made the twentieth monthly payment, free and clear title of the Aircraft would pass to Plaintiff. *Id.*

9. At the time the Agreement was signed, Skyjet already paid CSDS an "Initial deposit" of Seven Hundred Fifty Thousand Dollars ($750,000.00) to be contributed to the down

payment once Skyjet inspected the Aircraft. *See id* at Section 4; *see also* Composite Exhibit "C" to Plaintiff's Amended Verified Complaint.[1]

10. Upon receipt of this Initial Deposit, CSDS agreed to "remove the [A]ircraft from the market until such time [Skyjet] has technically inspected[2] *and* has accepted or rejected the aircraft." *Id.* (emphasis added).

11. Moreover, the initial deposit was "refundable until [Skyjet] . . . accepted the aircraft technically." *Id.* at Section 10. Whereas, "[s]oon after technical acceptance, Deposit shall be non-refundable in all instances, except; 1. Aircraft is damages or destroyed before delivery to [Skyjet]. 2. [CSDS] is unable to deliver the [A]ircraft per this agreement with [Skyjet], at no fault [Skyjet]." *Id.* at Section 4.

12. To "technically accept" the Aircraft, Skyjet was first required and had the contractual right to inspect the Aircraft. *Id.* at Section 5.

13. More specifically, the Parties agreed to the following inspection:

[Skyjet] shall conduct a acceptance inspection at [the Aircraft's] current location at Miami Tech MRO, Miami international Airport (MIA), Florida, and soon after, [Skyjet] shall accept or reject the aircraft based on Airworthiness discrepancies with the aircraft or discrepancies with the records. If no such discrepancies are found, [Skyjet] shall accept the aircraft technically, by signing of the Technical Acceptance form . . .

*Id.*; *see also id.* at Exhibit B.

14. On or around September 9, 2021, Skyjet went to Miami Tech MRO, Miami International Airport to perform its inspection of the Aircraft.

---

[1] Before August 18, 2021, Plaintiff had made three initial deposit payments for a total $500,000.00. On August 18, 2021, Defendant refunded Plaintiff $150,000.00. On September 7, 2021, Plaintiff made another initial deposit payment of $400,000.00, amounting to a total initial deposit of $750,000.00.

[2] Technical inspection is defined below in paragraph 22.

3

15. However, Skyjet was prohibited from inspecting the Aircraft. Miami International Airport authorities informed Skyjet that all access to the Aircraft was prohibited as a result of a lien attached to the Aircraft. *See* Exhibit "D" of Plaintiff's Amended Verified Complaint

16. Upon information and belief, the Aircraft has other outstanding liens as well. *See* Exhibit "E" of Plaintiff's Amended Verified Complaint.

17. Prior to this date, Skyjet was not notified that there were any liens attached to the Aircraft preventing it from inspection.

18. Shortly thereafter, Skyjet informed CSDS that it could not sign the Technical Acceptance Form because the lien prevented Skyjet from inspecting the Aircraft. Although CSDS nevertheless encouraged Skyjet to sign the Technical Acceptance Form despite having not inspected the Aircraft, Skyjet refused until it could have its agreed-to inspection.[3]

19. In addition, Skyjet waited to pay CSDS the down payment's remaining Two Hundred and Fifty Thousand Dollars ($250,000.00) as it was Skyjet's understanding that the rest of the down payment was not due Skyjet inspected the Aircraft.

20. While waiting for CSDS to satisfy the lien so that Skyjet could inspect the Aircraft, on or about February 1, 2022, CSDS emailed Skyjet stating that the Agreement was terminated due to default, that it would be refunding the Initial Deposit to Skyjet, and that the Aircraft was now committed to another operator.[4] *See* Exhibit "F" of Plaintiff's Amended Verified Complaint

21. On or about February 24, 2022, CSDS returned a total of Five Hundred Thousand Dollars ($500,000.00). *See* Exhibit "G" of Plaintiff's Amended Verified Complaint.[5]

---

[3] The "Aircraft Technical Acceptance" Form attached as Exhibit B to the Agreement was not executed by Skyjet's owner, Ahmed Mustafa. CSDS printed Ahmed Mustafa's name in anticipation of his signature, however, no such signature was ever executed as stated above.

[4] This is all irrespective of the fact that: (1) Skyjet was not in default of the Agreement and (2) the Initial Deposit was refundable because Skyjet did not sign the Technical Acceptance form. In this Email, CSDS even acknowledged that the Initial Deposit would be refunded to Skyjet.

[5] Note Special Instructions of Wire Confirmation "757F MSN 25014 Deposit Refund".

4

22. However, CSDS refuses to return the outstanding Initial Deposit in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) despite Skyjet being completely entitled to a full refund of its Initial Deposit.

23. As stated above, according to Section 10 of the Agreement, the full Initial Deposit was refundable until Skyjet accepted the Aircraft technically, which it was never able to do because CSDS allowed liens to be attached to the Aircraft, which in turn, prevented Skyjet from inspecting the Aircraft.

24. CSDS wrongfully terminated the Agreement because Skyjet was not in default. It was the Parties common understanding under the Agreement and common-sense logic that the remaining down payment and subsequent monthly payments were not due until Skyjet inspected and accepted the Aircraft.

25. In fact, it was CSDS who breached the Agreement by not taking the Aircraft off the market as required by Section 4 of the Agreement which states "[u]pon receipt of the deposit [CSDS] shall remove the aircraft from the market until such time [Skyjet] has technically inspected and has accepted or rejected the aircraft" Exhibit B at Section 4, by allowing liens to be attached to the Aircraft, preventing Skyjet from inspecting it, and by committing to sell the Aircraft to another operator.

26. To date, Defendant refuses to return Plaintiff's remaining initial deposit/payments and/or honor the Agreement by selling the Plaintiff the Aircraft.

27. Despite Plaintiff's several attempts to resolve this dispute without litigation, these attempts have been made to no avail as Defendant continues to refuse to comply with the Agreement.

28.     In light of Plaintiff's clear legal interest in the Aircraft and Defendant's complete refusal to honor their Agreement, the Court should immediately enjoin Defendant from selling the Aircraft until further order of this Court.

29.     Plaintiff stands ready, willing, and able to post a bond pursuant to Rule 1.610(1)(b).

30.     Based on the foregoing conduct, as further discussed herein and in the Certificate of Counsel, this Motion is submitted pursuant to Rule 1.610(1)(a) on an ex parte basis without written or oral notice to the Defendant since immediate and irreparable injury, loss, and damage will result to Plaintiff before Defendant can be heard in opposition.

## MEMORANDUM OF LAW

### I. Plaintiff Meets All Required Elements Under Florida Common Law For The Issuance Of A Temporary injunction.

Under Florida law, a party seeking a temporary injunction must establish: (i) a likelihood of irreparable harm and the unavailability of an adequate remedy at law; (ii) a substantial likelihood of success on the merits; (iii) that the threatened injury to the petitioner outweighs any possible harm to the respondent; and (iv) that the granting of a temporary injunction will not disserve the public interest. *Graham v. Edwards*, 472 So.2d 803, 806 (Fla. 3d DCA 1985) (citing *Department of Business Regulation, Division of Alcoholic Beverages & Tobacco v. Provende, Inc.*, 399 So.2d 1038, 1041 (Fla. 3d DCA 1981). Granting a motion for temporary injunction rests within a court's "broad discretion," *Sacred Family Investments, Inc. v. Coral Supermarkets, Inc.*, 20 So. 3d 412, 415 (Fla. 3d DCA 2009), and is "guided by established rules of the principles of equity jurisprudence, in view of the particular facts presented in each case." *Muss v. City of Miami Beach*, 312 So. 2d 553, 554 (Fla. 3d DCA 1975). Additionally, the temporary nature of a temporary injunction is central to a court's inquiry, as "the purpose of a temporary injunction is not to resolve

6

disputed issues, but to preserve the status quo pending final hearing on the merits." *TJ Mgmt. Group, LLC v. Zidon,* 990 So.2d 623, 625 (Fla. 3d DCA 2008).

### a. *Likelihood of Irreparable Harm and Unavailability of an Adequate Remedy at Law*

Although the "reason for the equitable remedy of temporary injunction is to maintain the status quo pending a final hearing . . . the underlying reason for preserving the status quo is to prevent irreparable harm resulting from damages caused by a change in the status quo." *Airlines Reporting Corp. v. Incentive Internationale Travel, Inc.,* 566 So.2d 1377, 1379 (Fla. 5th DCA 1990) (*citing Lieberman v. Marshall,* 236 So.2d 120 (Fla.1970)). In other words, "[t]he purpose of the temporary injunction is to prevent the likelihood of irreparable harm and possible injury from occurring before it happens." *Quirch Foods LLC v. Broce,* 314 So.3d 327, 342 (Fla. 3d DCA 2020). In doing so, it is not necessary to show that irreparable harm has already occurred, but only that there is a reasonable probability that such harm will occur unless the unlawful action is prevented. *City of Pompano Beach v. Yardarm Rest.,* 509 So. 2d 1295, 1297 (Fla. 4th DCA 1987).

Here, Plaintiff will suffer irreparable harm if Defendant is not estopped from selling the Aircraft during the pendency of Plaintiff's lawsuit against Defendant. As detailed herein and in Plaintiff's Amended Verified Complaint, Plaintiff entered into the Agreement with Defendant in which Defendant agreed to sell the Aircraft to Plaintiff. Defendant breached the Agreement and informed Plaintiff that it instead intends to sell the Aircraft to a third party. Due to Plaintiff's clear legal interest in the Aircraft, Defendant will cause Plaintiff irreparable harm if the Aircraft is sold to another purchaser.

As a threshold matter, planes and parts are not immune from the global supply chain crunches – in other words they are hard to come by. Furthermore Plaintiff is a cargo airline and makes representations to its customers about future routes/lanes/equipment and those customers

rely on those representations in order to assure themselves for future business with Plaintiff. Now, Plaintiff at least to certain customers appears to be unable to fulfill promises that were made, and this is damaging Plaintiff's standing in its own community. Loss of goodwill and reputational harm are the epitome of irreparable harm that cannot be fixed with money (i.e. remedies at law). *See Allied Universal Corp. v. Given*, 223 So. 3d 1040 (Fla. 3d DCA 2017) ("the only focus at the preliminary injunction stage is to maintain longstanding relationships and preserve the company's goodwill").

Plaintiff is entitled to have the status quo preserved by prohibiting Defendant from selling the Aircraft pending a final hearing on Plaintiff's underlying claims.

Should the Court disagree with all of the above, the Aircraft is also unique. As such, a monetary damage award cannot compensate Plaintiff for Defendant's breach because the Aircraft is unique and irreplaceable. *See Telemundo Media, LLC v. Mintz*, 194 So.3d 434, 436 (Fla. 3d DCA 2016).

### b. *Substantial Likelihood of Success on the Merits*

To obtain a temporary injunction, the movant bears the burden of establishing that there is a clear legal right to the ultimate relief sought and a substantial likelihood of success on the merits. *Airport Executive Towers v. CIG Realty, Inc.*, 716 So.2d 311, 313 (Fla. 3d DCA 1998); *see also Naegele Outdoor Advertising Co., Inc. v. City of Jacksonville*, 659 So.2d 1046, 1047 (Fla. 1995) (advancing a merely colorable claim is not enough to show a substantial likelihood of success).

Here, Plaintiff has a substantial likelihood of success on the merits of its underlying claim for Specific Performance. Specific performance can "only be granted when 1) the plaintiff is clearly entitled to it, 2) there is no adequate remedy at law, and 3) the judge believes that justice requires it." *All Seasons Condo. Ass'n, Inc. v. Patrician Hotel, LLC,* 274 So.3d 438, 445-46 (Fla.

3d DCA 2019) (*quoting Castigliano v. O'Connor*, 911 So. 2d 145, 148 (Fla. 3d DCA 2005) (*citing Mrahunec v. Fausti*, 385 Pa. 64, 68, 121 A.2d 878, 880 (1956))). "In order for a contract to be subject to specific performance, it must appear from the writing constituting the contract that the obligations of the parties with respect to [the] conditions of the contract and actions to be taken by the parties are clear, definite and certain." *Id.* (*quoting de Vaux v. Westwood Baptist Church*, 953 So. 2d 677, 682 (Fla. 1st DCA 2007) (*quoting Brown v. Dobry*, 311 So. 2d 159, 160 (Fla. 2d DCA 1975)); *see also 330 Michigan Ave., Inc. v. Cambridge Hotel, Inc.*, 183 So. 2d 725, 726-27 (Fla. 3d DCA 1966) ("Specific performance will not be enforced where the contract is not definite and certain as to essential terms and provisions and is incapable of being made so by the aid of legal presumption or evidence of established customs."))).

The facts are uncontroverted that Plaintiff and Defendant had a valid and enforceable contract in which Defendant would sell the Aircraft to Plaintiff in exchange for three million dollars ($3,000,000.00). The terms of the contract were clear, definite, and certain. In accordance with the Agreement's "payment terms," Plaintiff paid Defendant a Seven Hundred and Fifty Thousand Dollars ($750,000.00) initial deposit leading up to the inspection of the Aircraft. Plaintiff remains ready, willing, and able to fully perform under the Agreement. To be sure, Defendant never questioned or disputed any of this when it was taking in hundreds of thousands of dollars. However, despite Plaintiff's performance, Defendant's actions or inaction have prevented Plaintiff from inspecting the Aircraft, as is its right under the Agreement. Now, Defendant claims that it instead intends to sell the Aircraft to a third party. As a result of the unique nature the Aircraft, Plaintiff is entitled to a judgment compelling Defendant to perform its obligation owed to Plaintiff.

    **c. *Threatened Injury to Plaintiff Outweighs Any Possible Harm to Defendant***

The harm the movant will suffer by denial of an injunction must outweigh the harm the Defendant will suffer by the issuance of an injunction. *Cordis Corp. v. Prooslin*, 482 So.2d 486 (Fla. 3d DCA 1986). Here, there is no remedy at law that would be able to compensate the Plaintiff from the resulting damage should Defendant be allowed to sell the Aircraft. Once the Aircraft is sold, the damage will have been done to the Plaintiff. Conversely, should Defendant be restrained from selling the Aircraft, even should Plaintiff not prevail in this action, Defendant would still have the Aircraft and the ability to sell the Aircraft and therefore not suffer any loss or damages. The Temporary Injunction would merely maintain the status quo. Moreover, as required, Plaintiff has plead willingness and ability to post a bond for any damages the Defendant could sustain, which again appears to be none.

### d. *Public Interest Will Not Be Disserved*

Public policy considerations are an integral part of the equitable analysis for an injunctive relief request, and one of the issues is whether the entry of an injunction will or will not serve the public interest. *Sacred Family Invs., Inc. v. Doral Supermarket, Inc.*, 20 SO.3d 412 (Fla. 3d DCA 2009). Here, a temporary injunction would serve the public interest because as this Court has held, "[t]he public has a cognizable interest in the protection and enforcement of contractual rights." *Telemundo*, 194 So. 3d at 436 (*quoting Hilb Rogal & Hobbs of Fla., Inc. v. Grimmel*, 48 SO.3d 957, 962 (Fla. 4th DCA 2010). Thus, preventing Defendant from selling the Aircraft would serve the public interest to that end.

### II. Plaintiff Satisfies The Requirements Set Forth In Rule 1.610 For The Issuance Of An Ex Parte Temporary Injunction.

Pursuant to Rule 1.610:

(1) A temporary injunction may be granted without written or oral notice to the adverse party only if: (A) it appears from the specific facts shown by affidavit or verified pleading that immediate and irreparable injury, loss, or damage will result

10

to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts that have been made to give notice and the reasons why notice should not be required.

Here, Plaintiff submits its Amended Verified Complaint to establish facts showing that an immediate and irreparable injury, loss, or damage will result to Plaintiff before Defendant can be heard in opposition to the instant Motion. In addition, the below Certificate of Counsel details that efforts have been made to give notice to Defendant and the reasons why notice is not required.

## CONCLUSION

**WHEREFORE,** Plaintiff, SKYJET LLC, requests that this Court enter an Order temporarily enjoining Defendant, CSDS ASSET MANAGEMENT LLC, from selling or transferring ownership of the Aircraft until such time as the Court makes a final determination in this action and granting such other relief as the Court may deem just and proper.

## CERTIFICATE OF COUNSEL

The undersigned counsel, RYAN CLANCY, ESQ., certifies that the Defendant, CSDS ASSET MANAGEMENT LLC, received warnings and notices that Plaintiff would seek injunctive relief and made multiple efforts to resolve the issues with Defendant. Plaintiff and Defendant discussed settlement offers but were not able to come to an agreement. Further notice should not be required because immediate and irreparable injury, loss, and damage will result to Plaintiff before Defendant can be heard in opposition.

Dated: May 9, 2022

Respectfully submitted,

**AINSWORTH + CLANCY, PLLC**
801 Brickell Avenue, 8th Floor
Miami, FL 33131
Telephone: (305) 600-3816
Facsimile: (305) 600-3817
*Counsel for Plaintiffs*

By: s/Ryan Clancy

Ryan Clancy, Esq.
Florida Bar No. 117650
Email: ryan@business-esq.com
Email: info@business-esq.com