# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-21651-COOKE/DAMIAN

SKYJET, INC., *a Texas for profit corporation*,

      Plaintiff,

vs.

CSDS ASSET MANAGEMENT, LLC, *a Nevada limited liability company*,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [ECF NO. 7]

THIS CAUSE is before the Court on Plaintiff, Skyjet, Inc.'s ("Plaintiff" or "Skyjet"), Motion for Preliminary Injunction, filed June 3, 2022 (the "Motion"). [ECF No. 7]. The Motion was referred to the undersigned by the Honorable Marcia G. Cooke, United States District Judge, for a Report and Recommendation. [ECF No. 14]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has reviewed the Motion, the parties' memoranda [ECF Nos. 16 and 19], the pertinent portions of the record, and all relevant authorities and is otherwise fully advised in the premises. The undersigned also heard from the parties, through counsel, at an evidentiary hearing held on July 13, 2022. [ECF No. 33].

In the Motion, Skyjet seeks a preliminary injunction compelling specific performance of terms of the parties' contract. For the reasons that follow, it is recommended that the Motion for Preliminary Injunction [ECF No. 7] be denied.

## I.   BACKGROUND

This action arises out of a transaction for the purchase and sale of an aircraft. On May 9, 2022, Skyjet filed a six-count Amended Verified Complaint in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, seeking injunctive relief, equitable relief, declaratory judgment, and damages. *See* Am. Compl. [ECF No. 1-2]. Defendant, CSDS Asset Management, LLC ("CSDS"), removed the action to this Court on May 27, 2022. [ECF No. 1].

### A.   *Skyjet's Allegations*

These allegations are taken from the Amended Complaint and the attachments thereto, as well as the affidavit of Skyjet's principal, Ahmed Mustafa, submitted in support of the Motion. *See* Mustafa Aff. [ECF No. 7-1].

Skyjet is an air charter and commercial flight operator incorporated in Texas with its principal place of business and office in Miami-Dade County, Florida. Am. Compl. at ¶¶ 3, 10. CSDS is an aircraft sale and leasing limited liability company based in Nevada and California.[1] *Id.* at ¶¶ 4, 11. In June 2021, the parties began negotiations for the purchase and sale of a Boeing 757-200 Cargo Aircraft with Manufacturer Serial Number 25014 and registration N755CS (the "Aircraft"), of which CSDS was the registered owner. *Id.* at ¶ 12. Pursuant to a Letter of Authorization, dated June 28, 2021, CSDS authorized Skyjet to

---

[1] On July 29, 2022, the Court ordered CSDS to file an amended notice of removal satisfying its burden of showing the existence of subject matter jurisdiction. [ECF No. 36]. On August 3, 2022, CSDS filed the amended notice showing the parties' complete diversity of citizenship. [ECF No. 37]. The amended notice indicates that CSDS's sole principal, Benedict Sirimanne, is a resident of California. *Id.* at ¶ 4. Thereafter, the Court directed CSDS to file proof of the citizenship of its members, which CSDS did. [ECF No. 40].

operate the Aircraft and promised to cooperate with Skyjet in its efforts to get the Aircraft into operation. *Id.* at ¶ 13; ECF No. 1-4 (the "Authorization Letter").

On September 7, 2021, the parties entered into a Sale-Purchase Agreement (the "Agreement") in which Skyjet agreed to purchase the Aircraft, with no engines installed, from CSDS for three-million dollars ($3,000,000.00). Am. Compl. at ¶ 14; Ex. A to Am. Compl. [ECF No. 1-3]. According to the payment terms of the Agreement, Skyjet was required to make a one-million-dollar ($1,000,000.00) down payment and twenty (20) subsequent payments of one-hundred thousand dollars ($100,000.00) per month thereafter. *See* Agreement at ¶ 3. The Agreement did not specify any dates on which the down payment and subsequent monthly payments were due. However, in the Amended Complaint, Skyjet alleges the course of conduct between the parties dictated that the down payment was not due until Skyjet inspected and technically accepted the Aircraft. Am. Compl. at ¶ 16. Pursuant to the Agreement, after the twentieth payment was made, title to the Aircraft would pass to Skyjet free and clear of any liens or encumbrances. Agreement at ¶ 3. At the time the Agreement was signed, Skyjet had already paid CSDS an initial deposit of seven-hundred fifty thousand dollars ($750,000.00) to be applied to the down payment once Skyjet inspected the Aircraft. Am. Compl. at ¶ 18; *see also* Mustafa Aff. at ¶ 11.

Skyjet alleges that upon receipt of the initial deposit, CSDS agreed to "remove the [A]ircraft from the market until such time [Skyjet] has technically inspected and has accepted or rejected the [A]ircraft." Am. Compl. at ¶ 19; Mustafa Aff. at ¶ 12. According to Skyjet, the initial deposit was refundable until Skyjet "technically accepted" the Aircraft, as that term is defined in the Agreement. Am. Compl. at ¶ 20; Mustafa Aff. At ¶ 13. Skyjet bases this contention on the following provisions in the Agreement: "Deposit shall remain refundable

3

until Purchaser has accepted the aircraft technically" and "Soon after technical acceptance, Deposit shall be non-refundable in all instances . . . ." Agreement at § 4.

Skyjet alleges that on September 9, 2021, its representative went to the Miami International Airport ("MIA") to perform a technical inspection of the Aircraft. Am. Compl. at ¶ 23; Mustafa Aff. at ¶ 16. Skyjet further alleges it was not able to perform the inspection because MIA authorities informed its representative that all access to the Aircraft was prohibited due to liens attached to the Aircraft. Am. Compl. at ¶ 24. According to the Notice and Claim of Lien attached to the Amended Complaint, the Aircraft had incurred storage or parking charges and other fees at MIA that caused MIA to assert liens on the Aircraft. *Id.*; Ex. D to Am. Compl. [ECF No. 1-6]. Skyjet alleges it was not notified prior to the date of inspection of any existing liens attached to the Aircraft. Am. Compl. at ¶ 26; Mustafa Aff. at ¶ 19. Skyjet also alleges it informed CSDS that it could not technically accept the Aircraft because the lien prevented Skyjet from inspecting the Aircraft as agreed. Am. Compl. at ¶ 27; Mustafa Aff. at ¶ 20. Skyjet further alleges it did not pay the remaining two-hundred and fifty thousand dollars ($250,000.00) of the required down payment because it was Skyjet's understanding that the rest of the down payment was not due until Skyjet had inspected the Aircraft. Am. Compl. at ¶ 28.; Mustafa Aff. at ¶ 22.

On February 1, 2022, CSDS informed Skyjet by email that the Agreement was terminated due to default, that Skyjet's initial deposit would be refunded, and that the Aircraft was committed to another operator. Am. Compl. at ¶ 29; Mustafa Aff. at ¶ 22. On February 24, 2022, CSDS refunded a total of five-hundred thousand dollars ($500,000.00) to Skyjet. Am. Compl. at ¶ 30; Mustafa Aff. at ¶ 24 and Ex. G.

Skyjet alleges that CSDS has refused to return the outstanding initial deposit in the amount of two-hundred fifty thousand dollars ($250,000.00) despite Skyjet's entitlement to a full refund of the initial deposit per the Agreement. Am. Compl. at ¶ 31. Skyjet also alleges that CSDS wrongfully terminated the Agreement because Skyjet was not in default as it was the parties' understanding that the outstanding down payment and subsequent monthly payments were not due until Skyjet inspected and technically accepted the Aircraft. *Id.* at ¶ 33.

### B. *Skyjet's Claims*

In the Amended Complaint, Skyjet asserts six causes of action: (1) request for declaratory judgment regarding when the full one-million-dollar down payment was due per the terms of the Agreement (Count I); a temporary injunction to enjoin CSDS from selling the Aircraft to a third party until Skyjet is able to inspect the Aircraft and accept or reject it (Count II); specific performance of CSDS's obligations under the Agreement, including clearing any liens attached to the Aircraft to allow Skyjet to inspect the Aircraft (Count III); breach of contract for CSDS's failure to remove the Aircraft from the market, for its wrongful termination of the Agreement, for allowing liens to be attached to the Aircraft, and for failing to refund Skyjet's full initial deposit (Count IV); unjust enrichment for CSDS's failure to refund the outstanding $250,000.000 initial deposit (Count V); and permanent injunction to enjoin CSDS from selling the Aircraft to a third party until Skyjet is able to inspect the Aircraft and accept or reject it (Count VI).

### C. *CSDS's Counterclaim*

On June 3, 2022, CSDS filed an Answer and Affirmative Defenses to the Amended Complaint, in addition to a Counterclaim for breach of contract against Skyjet. [ECF No. 13].

In the Counterclaim, CSDS alleges the parties initially entered into an agreement for the purchase and sale of the Aircraft on May 24, 2021 (the "First Agreement"). *Id.* at ¶ 125 and Ex. F to the Counterclaim. According to CSDS, under the terms of the First Agreement, Skyjet was required to pay a down payment of $1,000,000.00 and, "soon after," to make monthly payments of $100,000.00 until the total purchase price of $3,000,000.00 for the Aircraft was paid. *Id.* CSDS further alleges that after Skyjet paid a deposit of $200,000.00 on May 25, 2021, CSDS gave Skyjet access to the Aircraft, which was situated at MIA, and to its records for inspection. *Id.* at ¶¶ 126–27. CSDS claims that Skyjet "was satisfied with the results of the inspection and technically accepted" the Aircraft. *Id.* at ¶ 127.

CSDS alleges that after the satisfactory inspection of the Aircraft, Skyjet paid an additional $100,000.00 on June 29, 2021, and an additional $200,000.00 on July 15, 2021. *Id.* at ¶ 128. According to CSDS, as of the time of the technical acceptance, Skyjet had paid half of the $1,000,000.00 down payment required by the First Agreement. *Id.* at ¶ 129. CSDS also claims that it "brought this up" with Skyjet, which "repeatedly assured that the remainder of the down payment was forthcoming as well as the commencement of the monthly payments of $100,000." *Id.* Meanwhile, CSDS alleges the Aircraft was incurring parking charges at MIA. *Id.* at ¶ 130.

Thereafter, on August 8, 2021, CSDS terminated the First Agreement based on Skyjet's default by failing to make the outstanding payments. *Id.* at ¶ 131. At that time, CSDS was holding the $500,000.00 portion of the down payment from the First Agreement. *Id.* CSDS claims that, despite the termination of the First Agreement, Skyjet was still interested in purchasing the Aircraft and promised, by email from its principal, to pay the balance of the down payment plus an additional $500,000.00 to cover the outstanding monthly payments,

6

for a total of $1,150,000.00. *Id.* at ¶ 132. CSDS claims that it returned $150,000.00 of the down payment at Skyjet's request due to an emergency. *Id.* CSDS alleges that it then agreed to renew the agreement for the purchase and sale of the Aircraft based on Skyjet's representations. *Id.* at ¶ 133.

According to the allegations in the Counterclaim, Skyjet wired $400,000.00 and promised to send another $500,000.00 "within days." *Id.* at ¶ 134. CSDS alleges that it then sent a second, new agreement, the September 7, 2021 Agreement, to Skyjet by email and stated: "I have just confirmed receipt of the $400K wire. Thank you very much. We have received a total of $750,000 from you towards this Aircraft. Please see attached the amended agreement with new dates. Please initial each page, sign the technical acceptance form . . . and send it back to me." *Id.* CSDS alleges that Skyjet's principal, Mr. Mustafa, signed the Agreement and the Technical Acceptance Certificate three days later. *Id.* at ¶ 135 (citing the Agreement attached to the Amended Complaint).

Skyjet never paid the remainder of the down payment ($250,000.00). *Id.* at ¶ 136. CSDS alleges it notified Skyjet of the default and of its obligations under the Agreement and that Skyjet "promised several times to catch up on payments." *Id.* at ¶ 137. CSDS claims Skyjet failed to cure its default within the cure period provided in the Agreement, and that after expiration of the cure period, CSDS was no longer obligated to sell the Aircraft to Skyjet or to return the deposit, which was non-refundable pursuant to Section 4 of the Agreement. *Id.* at ¶ 138. On February 1, 2022, CSDS sent a termination notice by email to Skyjet stating:

> Just so there is not misunderstanding, this was the agreement you signed and paid a partial deposit for. This agreement has been terminated due to default, end of July 2021. Per our discussion, I will refund your deposit when the aircraft leaves. The aircraft [is] now committed to another operator. Hope you understand our position on this matter.

*Id.* at ¶ 139. CSDS claims that Skyjet breached the Agreement by failing to pay the remainder of the down payment, which caused CSDS damages, including parking charges incurred at MIA for the Aircraft. *Id.* at ¶ 140.

### D. Skyjet's Motion For Preliminary Injunction

On June 3, 2022, Skyjet filed the Motion now before the Court seeking a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 to enjoin CSDS from selling the Aircraft to a third party until such time as CSDS performs its obligations under the Agreement and Skyjet can inspect the Aircraft and accept or reject it based on the terms of the Agreement. (Mot. at 15).

In support of the Motion, Skyjet filed the affidavit of its manager, Mr. Mustafa. [ECF No. 7-1]. The Affidavit mirrors the allegations in the Amended Complaint, except for paragraph 21 in which Mr. Mustafa states that he did not sign the Technical Acceptance Form although his name appears printed on the form. (Mustafa Aff. at ¶ 21).

In response to the Motion, CSDS asserts that Skyjet's request for injunctive relief amounts to a prejudgment attachment and places upon CSDS the burden of incurring daily parking charges at MIA for the Aircraft. (Resp. at 3). Additionally, CSDS argues that Skyjet has failed to satisfy the four necessary requirements for injunctive relief. *Id.* at 5–14.

### E. The Evidentiary Hearing

The undersigned held an evidentiary hearing on the Motion on July 13, 2022. [ECF No. 33]. At the hearing, Skyjet's aviation consultant, Benny F. Benitez, and the President of CSDS, Benedict Sirimanne, appeared and testified. The undersigned finds the testimony of

each of these witnesses credible. Skyjet's manager, Ahmed Mustafa, however, was not present.[2] The parties' respective exhibits were admitted into evidence without objection.

Skyjet's first and only witness, Mr. Benitez, testified that he was hired in July 2021 by Skyjet as an independent aviation consultant to inspect the Aircraft and its records and assemble a work package or work scope of the items needed to put the Aircraft in operation. Mr. Benitez testified that he performed a visual walkaround of the Aircraft at MIA but was not granted access inside the Aircraft by MIA authorities. He testified that he was informed by MIA authorities that he was not permitted access to the inside of the Aircraft due to the liens against it and that he could see the Notices of the liens at that time. While not presented as an expert witness at the hearing, Mr. Benitez testified based on his knowledge and years of experience in the aviation industry about certain aspects of the Aircraft based on his visual inspection.

CSDS's President, Mr. Sirimanne, who has been in the aviation industry and working with airplanes for the past twenty years, testified regarding the process for converting a Boeing 757 passenger airplane into a cargo airplane, as had been done with the Aircraft at issue. Mr. Sirimanne explained the conversion could take approximately three months and cost anywhere from 4 to 5 million dollars. Mr. Sirimanne also testified that there is nothing particularly unique about a Boeing 757 cargo aircraft because, like many other cargo aircraft, it can carry 34 tons of cargo. Mr. Sirimanne testified that based on his conversations with Mr.

[2] On July 5, 2022, eight days before the scheduled evidentiary hearing, which was set by Order issued on June 17, 2022 [ECF No. 18], Skyjet filed a Motion seeking permission for its principal, Ahmed Mustafa, to appear virtually at the hearing. [ECF No. 21]. In the Motion, Skyjet indicated only that Mr. Mustafa resides in Canada and would have to travel by airplane to the hearing and that he has children for whom childcare "has deemed difficult." *Id.* at ¶ 2. The Court denied the requested relief on the grounds Skyjet failed to comply with Federal Rule of Civil Procedure 43(a) and failed to demonstrate good cause for the requested relief.

Mustafa during the negotiations for the Aircraft, Mr. Mustafa just needed a cargo plane with sufficient capacity and that there are other types of cargo planes available on the market that would serve the same purpose that Mr. Mustafa sought.

Skyjet did not present any testimony or evidence to counter Mr. Sirimanne's testimony.

### F. *Other Filings By The Parties*

On August 4, 2022, Skyjet filed a Second Amended Complaint without seeking leave of Court to do so. [ECF No. 38]. On August 18, 2022, CSDS filed an Answer and Affirmative Defenses and Counterclaim to the Second Amended Complaint. [ECF No. 41]. The undersigned notes that pursuant to Federal Rule of Civil Procedure 15(a)(2), a party must seek leave of court or indicate the consent of the parties prior to filing an amended pleading, and Skyjet did neither here. The substance of the Second Amended Complaint and the Answer thereto is not significantly different from the prior pleadings, and the amendments do not affect the analysis nor the determination of the Motion now before the Court.

## II.     APPLICABLE LEGAL STANDARDS

### A. *Preliminary Injunction*

"The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Robinson v. Att'y Gen.*, 957 F.3d 1171, 1178–79 (11th Cir. 2020) (quoting *Northeastern Fla. Ch. of Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990)). As the Supreme Court has specified:

> Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing[,] and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not

binding at trial on the merits. In light of these considerations, it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits.

*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (internal citations omitted). Additionally, a court may enter a preliminary injunction "to prevent the plaintiff from being injured, and where there is no adequate remedy at law." *Reynolds v. Roberts*, 207 F.3d 1288, 1299 (11th Cir. 2000).

A district court's authority to issue a preliminary injunction is governed by Federal Rule of Civil Procedure 65. The decision to grant or deny a preliminary injunction is "within the sound discretion of the district court." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). The district court may grant preliminary injunctive relief where the movant has demonstrated each of the following four prerequisites: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs the potential harm to the opposing party; and (4) that the injunction will not disserve the public interest. *Id.*; *see also Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

As the Eleventh Circuit has explained, a preliminary injunction is an "extraordinary and drastic remedy" not to be granted unless the movant clearly satisfies the burden of persuasion as to each of the four prerequisites. *Siegel*, 234 F.3d at 1176 (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)); *see also Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011) ("We begin our analysis with the unremarkable observation that a preliminary injunction in advance of trial is an extraordinary remedy."); *Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5th Cir.1975) (grant of preliminary injunction "is the exception rather

than the rule," and plaintiff must clearly carry the burden of persuasion).[3] At the preliminary injunction stage, the Court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is "appropriate given the character and objectives of the injunctive proceeding." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (quoting *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)).

Thus, Skyjet, as the movant, bears the burden of persuasion as to each of the prerequisites to preliminary injunctive relief. Failure to satisfy any one of the prerequisites requires denial of the injunction. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016).

### B.  Specific Performance

Because this case is before the Court on diversity grounds, Florida choice-of-law rules apply. *See Mazzoni Farms v. E.I. Dupont De Nemours & Co.*, 166 F.3d 1162, 1164 (11th Cir. 1999) (applying Florida's choice-of-law rules in a diversity case); *Attorney's Title Ins. Fund, Inc. v. Regions Bank*, 491 F. Supp. 2d 1087, 1093 (S.D. Fla. 2007) (Ungaro, J.) ("Florida law indisputably governs the substantive issues in a case where the federal court's jurisdiction is based on diversity of citizenship."). Moreover, Florida substantive law applies because the Agreement at issue specifies that the laws of the State of Florida shall apply in the construction and interpretation of the Agreement. Agreement at ¶ 18. *See Morgan Walton Prop. v. Int'l City Bank & Trust Co.*, 404 So. 2d 1059, 1061 (Fla. 1981) ("Florida's established rule for choice of

---

[3] The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

law governing the validity and interpretation of contracts looks to the law of the place of contracting and the law of the place of performance.").

Under Florida law, a decree of specific performance is an equitable remedy granted at the discretion of the trial court. *Invego Auto Parts, Inc. v. Rodriguez*, 34 So. 3d 103, 104 (Fla. 3d DCA 2010). To obtain specific performance of a contract obligation, such as Skyjet seeks here, a plaintiff must show that (1) the plaintiff is clearly entitled to it; (2) there is no adequate remedy at law; and (3) the judge believes that justice requires it. *Castigliano v. O'Connor*, 911 So. 2d 145, 148 (Fla. 3d DCA 2005). Importantly, a court will not order specific performance of a contract if the obligations of the parties under the terms of the contract are not "clear, definite, and certain." *See generally Drost v. Hill,* 639 So.2d 105, 106 (Fla. 3d DCA 1994).

Preliminarily, the undersigned notes that the equitable remedies of specific performance and preliminary injunction are distinct. Specific performance, like all equitable remedies, requires the absence of an adequate remedy at law. *Castigliano*, 911 So. 2d at 148. Nonetheless, judgment on the merits is required prior to the issuance of a decree of specific performance. *See Humphrys v. Jarrell*, 104 So. 2d 404, 408 (Fla. 2d DCA 1958) ("[D]ecree is permissible only where the pleadings, depositions, or admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the movant is entitled to judgment or decree as a matter of law. The burden of proof is upon the party moving for . . . decree to show lack of a genuine issue of material fact, and all doubts as to the existence of such fact must be resolved against the movant."). On the other hand, the issuance of a preliminary injunction is procedurally truncated, occurring prior to judgment on the merits, and, for that reason, it is an extraordinary remedy requiring both the absence of an adequate remedy at law and the clear establishment of the burden of persuasion as to each of

13

the four prerequisites. *See Siegel*, 234 F.3d at 1176. In sum, there is "no automatic connection . . . between the ordinary remedy of specific performance and the extraordinary remedy of a preliminary injunction; to find otherwise would be to create a *per* se rule that would eliminate the crucial . . . test for preliminary injunctions, in such cases where specifically enforceable contractual provision are at issue." *Great Am. Ins. Co. v. Fountain Eng'g, Inc.*, No. 15-CIV-10068, 2015 WL 6395283, at *2 (S.D. Fla. Oct. 22, 2015) (King, J.) (quoting *Firemen's Ins. Co. of Newark, N.J. v. Keating*, 753 F. Supp. 1146, 1151 (S.D.N.Y. 1990) (internal quotations omitted)).

## III.   DISCUSSION

With the foregoing in mind, the undersigned considers whether Skyjet has satisfied its burden of persuasion as to each of the four prerequisites for a preliminary injunction.

### A.  *Substantial Likelihood of Success on the Merits*

The first element—substantial likelihood of success on the merits—is generally considered the "most important because granting a motion for preliminary injunction would be inequitable if the movant does not have a chance of success on the merits." *Learning Experience Sys., LLC v. Foxborough Child Care, LLC*, No. 10-cv-80561, 2010 WL 3565712, at *4 (S.D. Fla. Aug. 19, 2010); *see also Gonzalez ex rel. Gonzalez v. Reno*, No. 00-11424-D, 2000 WL 381901, at *1 (11th Cir. Apr. 19, 2000) (confirming that the first element is "generally" the most important); *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986) (same). This element is met "if good reasons for anticipating that result are demonstrated. It is not enough that a merely colorable claim is advanced." *S. Wine & Spirits of Am., Inc. v. Simpkins*, No. 10-21136-CIV, 2011 WL 124631, at *2 (S.D. Fla. Jan. 14, 2011) (Cooke, J.) (quoting *City of Jacksonville v. Naegele Outdoor Adver. Co.*, 634 So. 2d 750, 753 (Fla. 1st DCA 1994)).

The moving "party's failure to demonstrate a substantial likelihood of success on the merits may defeat the party's claim, regardless of its ability to establish any of the other elements." *Haitian Refugee Ctr., Inc. v. Christopher*, 43 F.3d 1431, 1432 (11th Cir. 1995); *see also Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975) ("No matter how severe and irreparable an injury one seeking a preliminary injunction may suffer in its absence, the injunction should never issue if there is no chance that the movant will eventually prevail on the merits. Nor is there need to weigh the relative hardships which a preliminary injunction or the lack of one might cause the parties unless the movant can show some likelihood of ultimate success."). Here, to demonstrate a substantial likelihood of success on the merits, Skyjet must cite facts that clearly establish a legal right to specific performance.

Skyjet asserts it has a substantial likelihood of success on the merits of its underlying claim for specific performance. (Mot. at 9). In Count III of the Amended Complaint, Skyjet seeks specific performance of CSDS's obligations under the Agreement (*i.e.*, allowing Skyjet to inspect the Aircraft and requiring CSDS to deliver title free and clear of liens or encumbrances upon Skyjet's final monthly payment). CSDS argues that Skyjet cannot establish a substantial likelihood of success on the merits on the specific performance claim because Skyjet breached the Agreement and is, therefore, not entitled to demand specific performance from CSDS and because specific performance is not an available remedy for the sale of personal property when the property is not of a unique character. (Resp. at 6–10). According to CSDS, the Aircraft is not sufficiently unique. CSDS also argues that specific performance is not available because Skyjet cannot demonstrate that it has no adequate remedy at law.

15

As explained above, to obtain specific performance of a contract obligation, a plaintiff must show that (1) the plaintiff is clearly entitled to it; (2) there is no adequate remedy at law; and (3) the judge believes that justice requires it. *Castigliano*, 911 So. 2d at 148.

1.  <u>Whether Skyjet Is Clearly Entitled To Specific Performance</u>

There are several problems with Skyjet's specific performance claim. Initially, a court will not order specific performance of a contract if the obligations of the parties under the terms of the contract are not "clear, definite, and certain." *See Drost,* 639 So. 2d at 106. The terms of the Agreement in this case, insofar as the parties' obligations, are not at all clear or certain. A reading of the terms does not make clear when, for example, the full million dollar down payment was due and whether there was a limit on the amount of time Skyjet had within which to complete inspection and pay the down payment after payment of the initial deposit. Nor is it clear what was considered an "acceptance inspection," or whether the inability to conduct an inspection relieves or delays Skyjet's obligations to pay the down payment. Indeed, the underlying litigation is a dispute about these very terms of the Agreement, among others. Thus, it cannot be said that the terms of the Agreement are "clear, definite, and certain" nor that Skyjet is clearly entitled to specific performance of the Agreement.

Skyjet is also not "clearly entitled" to specific performance because, as CSDS argues, the injunctive remedy of specific performance is not available for contracts involving personal property unless the property is of a particularly unique character. *See Hopkins v. Hopkins*, 623 So. 2d 586, 587 (Fla. 4th DCA 1993); *see also Barnes v. Diamond Aircraft Indus., Inc.*, 499 F. Supp. 2d 1311, 1319 (S.D. Fla. 2007) (King, J.) (noting that generally the injunctive remedy of specific performance "is not available for contracts involving personal property where the

16

good is commonly manufactured," and denying such relief in relation to the purchase of an aircraft).

Other federal courts, including one in this District, have found that aircraft are not so unique to warrant specific performance in contract actions. In so ruling, courts have found that an aircraft is a "commonly available manufactured good that does not justify specific performance." *See Diamond Aircraft*, 499 F. Supp. 2d at 1319 ("[T]he D–JET is a 'commonly available manufactured good' that does not justify specific performance. Barnes has not alleged that the value of the D–JET would be difficult to calculate, and has not denied that other manufacturers are currently producing similar aircraft . . . . As such, the injunctive remedy of specific performance does not apply to Barnes's claim."); *Klein v. PepsiCo, Inc.*, 845 F.2d 76, 80 (4th Cir. 1988) (reversing the grant of specific performance of contract for the sale of a Gulfstream G-II corporate jet because "money damages would clearly be adequate in this case, and because the aircraft is not unique" based in part on expert's testimony that "there were twenty-one other G–II's on the market, three of which were roughly comparable").

Skyjet argues that the Aircraft is "uniquely valuable and irreplaceable" for the following reasons: (1) there is allegedly only one similar aircraft comparable to the Aircraft at issue; (2) Skyjet would incur expenses and delay to secure a new replacement of the Aircraft and modify and refurbish it to the specified requirements; and (3) Skyjet will suffer the loss of goodwill and reputational harm as it cannot fulfill promises allegedly made to its customers. (Mot. at 12–13). At the hearing, Skyjet also argued that the Aircraft was unique because the airframe was modified from a passenger aircraft into a cargo aircraft by a third party with the supervision of the Aircraft's original manufacturer (Boeing) and that there are a limited number of comparable airplanes available on the market for sale. Notably, Skyjet did not

present evidence demonstrating the unavailability of other similar aircraft or the ability to have a different aircraft converted as the one in this case had been.

On the other hand, CSDS presented the testimony of its President, Mr. Sirimanne, who testified that there are other comparable 34-ton cargo airplanes available on the market and that Skyjet could also purchase a passenger airplane and have it converted into a cargo airplane with the same specifications as the Aircraft at issue for approximately $4–5 million dollars in about three months' time. Mr. Sirimanne, who is in the business of buying and selling aircraft, also testified that based on his personal knowledge there were around twenty-four comparable Boeing 757s on the market. Skyjet offered no evidence to counter Mr. Sirimanne's testimony, and, having had the opportunity to observe Mr. Sirimanne's testimony in court, the undersigned finds his testimony credible.

The undersigned is not persuaded that the Aircraft at issue is sufficiently unique so as to justify specific performance. Again, Skyjet did not provide any evidence demonstrating that the Aircraft is of a unique character and value. At the hearing, the undersigned asked Skyjet's counsel what evidence is in the record regarding the allegedly unique nature of the Aircraft. Skyjet's counsel pointed to the WhatsApp messages between Mr. Mustafa and Mr. Sirimanne. (Plaintiff's Exhibit 2). The undersigned reviewed the WhatsApp messages and did not find that they contain evidence demonstrating the allegedly unique nature of the Aircraft. To the contrary, throughout the messages, and even after the parties' agreement to purchase the Aircraft fell through, Mr. Mustafa's messages indicate his interest in purchasing other airplanes that can be converted to cargo airplanes like the Aircraft at issue. [ECF No. 7-1 at 34–35 (Mr. Mustafa: "Also we are interested on the B747-8 send me an offer")].

18

Thus, for the above reasons, the undersigned finds Skyjet has not demonstrated that it is clearly entitled to specific performance, and, therefore, Skyjet cannot establish a reasonable likelihood of success on the merits of its specific performance claim.

2.  Whether Skyjet Has An Adequate Remedy At Law

Skyjet's specific performance claim is also not likely to succeed on the merits because Skyjet has not demonstrated that it has no adequate remedy at law. To succeed on a claim for specific performance of a contract, a party must have no adequate remedy at law. *See Castigliano*, 911 So. 2d at 148. Here, the Amended Complaint includes claims for breach of contract and unjust enrichment in which Skyjet seeks damages. Am. Compl. at ¶¶ 66–85. Specifically, Skyjet seeks to recover the outstanding $250,000 of the initial $750,000 deposit paid to CSDS. *Id.* As demonstrated by the evidence, CSDS refunded $500,000, but there is a dispute over whether Skyjet is entitled to a refund of the remaining $250,000, and Skyjet seeks a return of the remaining $250,000. In addition, Skyjet seeks compensation for lost business opportunities resulting from CSDS's failure to comply with the Agreement and turn over the Aircraft. Again, this can be compensated with money damages. Finally, as set forth above, the undersigned finds that the Aircraft is not so unique that it cannot be replaced through the purchase of another similar aircraft, relief that can be obtained with an award of money damages. The undersigned finds that specific performance is not available to restrain CSDS's use of the Aircraft pending entry of a judgment on the merits of the parties' claims where Skyjet may be able to remedy any harm it incurs as the result of the loss of the Aircraft at issue through compensatory damages. *See, e.g.*, *Airport Executive Towers v. CIG Realty Inc.*, 716 So. 2d 311, 313 (Fla. 3d DCA 1998) (holding in an action at law for money damages, no judicial authority exists for an order restraining the use of a defendant's unrestricted assets prior to the

entry of judgment). Consequently, Skyjet's requested relief of specific performance is not appropriate because Skyjet has an adequate remedy of law in the form of money damages.

3. Whether Justice Requires Specific Performance

The final element of a claim for specific performance is a finding that justice requires such relief. *Castigliano*, 911 So. 2d at 148. As discussed above, the undersigned finds there are several issues with Skyjet's specific performance claim, but, most significantly, justice does not require the relief because, ultimately, any harm to Skyjet from failure to enforce the parties' Agreement may be cured by an award of compensatory damages.

In sum, the undersigned finds that Skyjet has failed to establish a substantial likelihood of success on the merits of its underlying claim for specific performance.

### B. Irreparable Injury

The Eleventh Circuit has specified that "[a] showing of irreparable injury is the *sine qua non* of injunctive relief." *Siegel*, 234 F. 3d at 1176 (citations omitted). Consequently, even if Skyjet establishes a substantial likelihood of success on the merits of its claim for specific performance, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief inappropriate. *Id. See also Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 909 F.2d 480, 486 (11th Cir.1990) (affirming denial of preliminary injunction even though plaintiff established likelihood of prevailing because plaintiff failed to meet burden of proving irreparable injury). As the Eleventh Circuit explained, an

> [i]rreparable injury must be neither remote nor speculative, but actual and imminent. Moreover, if an injury can be "undone through monetary remedies," it is not irreparable. *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990). The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective

20

relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 F. App'x 502, 504 (11th Cir. 2007) (citing *Siegel*, 234 F.3d at 1176).

It is well-settled that "where money damages are available and adequate, even money damages that may be difficult if not impossible to collect, injunctive relief is inappropriate." *GLL Air, LLC v. Mid-South Servs., Inc.*, No. 14-cv-1698, 2014 WL 12623246, at *4 (M.D. Fla. Oct. 10, 2014) (citing *SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 F. App'x 502, 503–04 (11th Cir. 2007) ("It is well-settled that 'equitable relief is available only in the absence of an adequate remedy at law.' The critical question is whether there exists an adequate remedy at law, not whether the moving party prefers one remedy to another.")); *see also Rosen v. Cascade Int'l Inc.*, 21 F.3d 1520, 1531 (11th Cir. 1994) (holding "a district court lacks the authority to issue a preliminary injunction freezing the assets of a defendant in a case seeking only money damages").

As discussed above, Skyjet has not demonstrated that there is no adequate remedy at law because its alleged harms can be cured through an award of monetary damages. Therefore, Skyjet cannot satisfy its burden of persuasion to demonstrate that it faces a substantial threat of irreparable injury, and a preliminary injunction is not an available remedy in this case.

### C. Balance of Harm

The third element of the preliminary injunction test "requires that the movant prove that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant." *City of S. Miami v. DeSantis*, 408 F. Supp. 3d 1266, 1307 (S.D. Fla. 2019) (Bloom, J.). Thus, the Court must "must balance the competing claims of injury and must

21

consider the effect on each party of the granting or withholding of the requested relief." *Id.* (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

The undersigned has already found that Skyjet has neither established a substantial likelihood of success on the merits on its claim for specific performance nor that it faces a substantial threat of irreparable injury. On the other hand, CSDS would be harmed by the imposition of an injunction because the Aircraft has already incurred parking charges at MIA in excess of $300,000. (Resp. at 13). Additionally, CSDS will lose the ability to sell the Aircraft to other interested buyers if the injunction issues. *See TransUnion Risk & Alternative Data Sols., Inc. v. MacLachlan*, 625 F. App'x 403, 407 (11th Cir. 2015) (noting that a district court must consider the harm that a defendant will suffer if an injunction is issued).

The balance of potential harms faced by the parties weighs against granting the injunction as CSDS would no doubt suffer greater harm than Skyjet if the injunction were to issue.

### D. Public Interest

The fourth element requires that the injunction serve the public interest. *See Superior Consulting Servs., Inc. v. Shaklee Corp.*, 710 F. App'x 850, 853 (11th Cir. 2017). The public has an "interest in upholding and protecting freedom to contract and to enforce contractual rights and obligations." *Mohr v. Bank of New York Mellon Corp.*, 393 F. App'x 639, 646 (11th Cir. 2010). A preliminary injunction to enforce the parties' rights and obligations under their agreement would not disserve the public interest. *See id.* However, as noted above, Skyjet has an adequate remedy at law in the form of damages under its breach of contract claim. *See, e.g.*, *United States v. Stinson*, 661 F. App'x 945, 954 (11th Cir. 2016) (affirming preliminary injunction entered by district court where the government had no other adequate remedy

available to prevent the harm caused by the defendant). Therefore, the public's interest in enforcing Skyjet's rights through the issuance of an injunction is diminished as Skyjet's injuries may be cured by monetary damages.

Therefore, although the undersigned recognizes the interest served by enforcing contractual obligations, under the circumstances presented in this case, the undersigned finds that an injunction would not serve the public interest.

## IV.    RECOMMENDATION

For all of the reasons set forth above, the undersigned finds that Skyjet has not satisfied its burden of persuasion as to the prerequisites for injunctive relief, and, therefore, the requested preliminary injunction should be denied.

Accordingly, the undersigned respectfully recommends that Plaintiff's Motion for Preliminary Injunction [ECF No. 7] be **DENIED.**

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Marcia G. Cooke, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of

justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

      **RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida this 22nd day of August 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

Copies to:    Hon. Marcia G. Cooke
              Counsel of Record